**PENNSYLVANIA ENVIRONMENTAL DEFENSE FOUNDATION, Plaintiff,**

**v.**

**BELLEFONTE BOROUGH, Defendant.**

**Civ. No. 88–0992.**

United States District Court, M.D. Pennsylvania.

June 23, 1989.
As Amended July 31, 1989.

John E. Childe, Jr., Hummelstown, Pa., for plaintiff.

James M. Sheehan, Barbara Reynolds, Goldberg, Katzman & Shipman, P.C., Har-

risburg, Pa., David A. Flood, Bellefonte, Pa., for defendant.

Amelia S. Salzman, Louise F. Milkman, Land & Natural Resources Div., Policy, Legislation and Sp. Litigation Section, Washington, D.C., for U.S.

## ORDER

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

#### I. Introduction.

Pennsylvania Environmental Defense Foundation (the Foundation) commenced this citizen suit pursuant to 33 U.S.C. § 1365 (which is § 505 of the Clean Water Act, also known as the Federal Water Pollution Control Act, *see Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, ——, 108 S.Ct. 376, 378, 98 L.Ed.2d 306 (1987)) by filing a complaint on June 27, 1988, in which it named as the sole Defendant Bellefonte Borough Sewage Authority. By order of July 5, 1988, we granted the Foundation's motion filed the same day to amend its complaint by changing the name of the Defendant from Bellefonte Borough Sewage Authority to Bellefonte Borough. The primary allegation made by the Foundation in its complaint is that Bellefonte Borough (Bellefonte) operates a sewage treatment plant in Centre County, Pennsylvania, that this plant discharges waste water into Spring Creek, and that the discharge from the plant has repeatedly violated the terms and provisions of its National Pollutant Discharge Elimination System permit by emptying more pollutants into Spring Creek than it was authorized so to do by its National Pollutant Discharge Elimination System permit.

On January 31, 1989, Bellefonte filed a motion to enter consent decree. The Foundation concurred in this motion. Bellefonte filed along with its motion to enter consent decree a copy of a proposed consent decree between the Foundation and Bellefonte and served a copy upon the Attorney General of the United States and the Administrator of the Environmental Protection Agency as required by 33 U.S.C. § 1365(c)(3). On March 20, 1989, the United States filed "comments" with regard to the Foundation's and Bellefonte's proposed consent decree. We issued an order on March 24, 1989, setting forth a briefing schedule concerning (1) whether we should consider the comments filed by the United States regarding the proposed consent decree and (2) whether we should grant Bellefonte's motion to enter consent decree. On March 27, 1989, the Foundation filed a motion to preclude the comments of the United States to the proposed consent decree and a brief in support thereof. Bellefonte concurred in the Foundation's motion to preclude the comments of the United States to the proposed consent decree. On March 31, 1989, we issued an order setting forth a briefing schedule on the Foundation's motion to preclude the comments of the United States to the proposed consent decree. Briefing has been completed with regard to both Bellefonte's motion to enter consent decree and the Foundation's motion to preclude the comments of the United States to the proposed consent decree and both motions are ripe for disposition.

#### II. Discussion.

A. The Foundation's Motion to Preclude the Comments of the United States to the Proposed Consent Decree.

1. May we Consider the Comments Filed by the United States Regarding the Proposed Consent Decree in this Case.

The first issue we must resolve in ruling upon the Foundation's motion to preclude the comments of the United States to the proposed consent decree is whether we may consider the United States's comments. Section 1365(c) of 33 U.S.C. provides in pertinent part as follows:

(2) In such action under this section, the Administrator [of the Environmental

Protection Agency], if not a party, may intervene as a matter of right.

(3) *Protection of Interests of United States*

Whenever any action is brought under this section in a court of the United States, the plaintiff shall serve a copy of the complaint on the Attorney General and the Administrator. No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

The Foundation argues that the above-quoted portions of 33 U.S.C. § 1365(c) do not specifically authorize the United States to file comments regarding a proposed consent decree in a case in which the United States is not a party without first becoming a party to the action. The Foundation further asserts that the purpose of the 45–day notice provision in 33 U.S.C. § 1365(c)(3) is to give the Administrator of the Environmental Protection Agency an opportunity to intervene in the action pursuant to 33 U.S.C. § 1365(c)(2). Based upon (1) its view of the purpose of 33 U.S.C. § 1365(c)(2) and (3), (2) its assertion that there is no indication that Congress intended to give the United States or any of its officials or agencies the "extra-judicial authority" to affect the outcome of citizen suits brought pursuant to the Clean Water Act without first becoming a party thereto, and (3) its claim that permitting the United States to comment on a judicial proceeding without it first becoming a party thereto deprives the parties of "their rights under the Federal Procedural Law," the Foundation maintains that we may not consider the United States's comments to the proposed consent decree in this case because neither the United States nor the Administrator of the Environmental Protection Agency has intervened.

The United States counters the Foundation's arguments by making the following assertions which demonstrate, it contends, that we may consider its comments: (1) Congress has charged the United States with primary responsibility for insuring that the Clean Water Act is properly enforced; (2) individuals or groups which bring citizen suits pursuant to the Clean Water Act are acting as private attorneys general and such citizen suits are meant to vindicate the public's health and welfare rather than private interests; (3) the United States could not possibly intervene in every citizen's suit brought pursuant to the Clean Water Act in order to insure that any consent decree was consistent with its interpretation of the relevant statutes; (4) filing comments regarding proposed consent decrees in citizen suits brought pursuant to the Clean Water Act is fully consistent with Congress's intent that the United States have primary responsibility for insuring that the Clean Water Act is properly enforced; and (5) its comments are in the nature of an amicus curiae brief.

■■■ The United States has the primary responsibility for insuring that the Clean Water Act is properly enforced. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. at ——, 108 S.Ct. at 383. Further, individuals or groups which bring citizen suits pursuant to the Clean Water Act are acting as private attorneys general and, accordingly, the purpose of such a suit is to protect and advance the public's interest in pollution-free waterways rather than to promote private interests. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 16–17, 17 n. 27, and 21, 101 S.Ct. 2615, 2624, 2625 n. 27, and 2627, 69 L.Ed.2d 435 (1981).

■■■ We are of the view that the United States's comments are in the nature of an amicus brief. District courts have broad discretion to appoint amici curiae. *Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982). When an appeal is taken from a district court order and no party to the appeal supports the decision under review, the court of appeals may appoint an attorney as amicus curiae to defend the district court's decision, the purpose being to give the court of appeals the benefit of an adversarial presentation of the issue. *See United States v. Haldeman,* 559 F.2d 31,

138–139 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), *rehearing denied,* 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed.2d 1103 (1977). Were we not permitted to consider the United States's comments to the proposed consent decree in this case, we would be deprived of an adversarial presentation as to the propriety of approving the proposed consent decree. Because of the United States's role in enforcing the Clean Water Act, because of the proper goal of a citizen suit pursuant to the Clean Water Act and because of the absence of any statutory language which prohibits us from considering comments by the United States even though the United States is not a party to the action, we are of the view that, construing the United States's comments to be an amicus brief, we may consider such comments in ruling upon Bellefonte's motion to enter consent decree. Interestingly enough, in a case to which the Foundation refers for another proposition, that court considered the United States's comments to the proposed consent decree in deciding whether to approve the consent decree. *See Natural Resources Defense Council v. Interstate Paper Corp.,* No. 487–169, 1988 WL 156749 (S.D.Ga. November 22, 1988) (appended to the parties' response filed April 17, 1989, to the United States's comments).

2. Should We Consider the Comments Filed by the United States Regarding the Proposed Consent Decree.

 Having decided that we may consider the comments filed by the United States concerning the proposed consent decree in this case, we must next decide whether we should exercise our discretion and in fact consider the United States's comments. As stated above, were we to not consider the United States's comments, there would be no adversarial presentation to the Court as to the propriety or wisdom of approving the proposed consent decree. Our judicial system is designed to function best when a Court is presented with opposing viewpoints concerning an issue which is before it for decision. Such an adversarial presentation is particularly helpful in a case such as this when the proposed consent decree

at issue is meant to vindicate the interest of the public but when no real representative of the public is a party to the litigation. Whether to grant or deny a person leave to participate in a case as amicus curiae rests within our discretion. We consider whether the proffered information is timely and useful in making our decision. *See Leigh v. Engle,* 535 F.Supp. 418, 420 (N.D.Ill. 1982). We are of the view that the United States's comments are both timely and useful. We will consider the United States's comments in ruling upon Bellefonte's motion to enter consent decree.

B. Bellefonte's Motion to Enter the Consent Decree.

The United States opposes our approving the proposed consent decree because the United States objects to the following two aspects of it: (1) the proposed consent decree does not require Bellefonte to pay any civil penalties to the United States and (2) the proposed consent decree requires Bellefonte to place $35,000.00 into an escrow account to be used by Trout Unlimited but there is, allegedly, no requirement that this money be used to mitigate the environmental harm caused or threatened by Bellefonte's alleged violations of the applicable federal pollution statute. Bellefonte responds to the United States's two concerns by stating the following: (1) the proposed consent decree filed for approval proposes to put money in escrow to be used by Trout Unlimited, an organization well acquainted with the needs of Bellefonte and Centre County, to better Spring Creek, the creek allegedly polluted by Bellefonte's sewage treatment plant; (2) early in Bellefonte's discussions with the Environmental Protection Agency, Bellefonte agreed to pay to the United States treasury a civil penalty of $60,000.00; (3) Bellefonte has never argued that it should not be subject to this penalty; and (4) the proposed consent decree now before the Court does not include a civil penalty to be paid to the United States because Bellefonte is concerned that any money paid to the United States pursuant to this decree might not be credited to Bellefonte when it enters into an expected

consent decree with the Environmental Protection Agency which Bellefonte and the Environmental Protection Agency are in the process of working out. The Foundation responds as follows to the United States's two concerns with the proposed consent decree:

> Under the Consent Decree between P.E.D.F. and Bellefonte, money is being contributed by agreement to a reputable organization and is not being diverted from the U.S. Treasury. The money is going to the Spring Creek Chapter of Trout Unlimited with the requirement that the funds be spent on projects on Spring Creek that meet the goals of the Federal Clean Water Act.

The Foundation's and Bellefonte's response filed April 17, 1989, to the United States's comments at 15.

The United States Supreme Court in *Local No. 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), discussed the role of a federal court in approving a consent decree:

> [A] federal court is more than "a recorder of contracts" from whom parties can purchase injunctions; it is "an organ of government constituted to make judicial decisions...." 1B J. Moore, J. Lucas & T., Currier, Moore's Federal Practice ¶ 0.409[5], p. 331 (1984).... Accordingly, a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction. Furthermore, consistent with this requirement, the consent decree must "com[e] within the general scope of the case made by the pleadings," *Pacific R. Co. v. Ketchum*, 11 Otto 289, 297, 101 U.S. 289, 297, 25 L.Ed. 932 (1880), and must further the objectives of the law upon which the complaint was based, [citations omitted]....
>
> This is not to say that the parties may agree to take action that conflicts with or violates the statute upon which the complaint was based.

478 U.S. at 526, 106 S.Ct. at 3077.

■ Had this case gone to trial and had the Foundation prevailed at trial, we would only be able to (1) enter an injunction to enforce the Clean Water Act against Bellefonte, (2) order Bellefonte to pay a civil penalty to the United States, and (3) award litigation costs, including reasonable attorney and expert witness fees, to the Foundation, 33 U.S.C. § 1365(a), (d); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. at 14–15, 101 S.Ct. at 2623. An individual or entity may not maintain a citizen suit pursuant to 33 U.S.C. § 1365 for wholly past violations of the Clean Water Act. *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376. Although Bellefonte has admitted that in the past its sewage treatment plant violated the pollutant discharge limits of Bellefonte's National Pollutant Discharge Elimination System permit (*see* Bellefonte's statement filed July 29, 1988, of material facts to which there is no genuine issue, paragraph 11; Bellefonte's brief filed July 29, 1988, in support of its motion for summary judgment at 14–15, 18), there is no unequivocal evidence before the Court that Bellefonte's sewage treatment plant is presently violating or will in the future violate the pollutant discharge limits of Bellefonte's National Pollutant Discharge Elimination System permit. Because of the absence of proof that Bellefonte's sewage treatment plant is violating or will violate the applicable pollutant discharge limits, we are of the view that the Supreme Court's decision in *Gwaltney of Smithfield v. Chesapeake Bay Foundation* makes it impermissible in a citizen suit brought pursuant to 33 U.S.C. § 1365 to disapprove a proposed consent decree solely for the reason because it does not contain a provision requiring the Defendant to pay a civil penalty to the United States.

■ The Environmental Protection Agency has developed guidelines which set forth conditions under which it will enter into a consent decree to settle a case in which it is a party that is brought for a violation or violations of the Clean Water Act. These guidelines, set forth in a document entitled "Clean Water Act—Penalty Policy for Civil Settlement Negotiations,"

which is appended to the United States's comments filed in this case, authorizes the Environmental Protection Agency to consent to settlements in cases brought under the Clean Water Act even though the settlement may require the Defendant to expend money for a "mitigation project" rather than require the Defendant's entire financial obligation as a result of the action to consist of a civil penalty paid to the United States. However, the "mitigation projects" which are authorized under the Environmental Protection Agency's Penalty Policy are, in general, only those which "closely address[ ] the environmental effects of the defendant's violation." Environmental Protection Agency's Clean Water Act—Penalty Policy for Civil Settlement Negotiations, V(2) at p. 7. (This rule will hereafter be referred to as the "mitigation project rule.") The United States recognizes in its comments regarding the proposed consent decree that the Environmental Protection Agency's Penalty Policy is not binding on this Court. United States's comments at 6 n. 5. The stated objective of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Environmental Protection Agency's mitigation project rule clearly furthers the objective of the Clean Water Act specified in 33 U.S.C. § 1251(a). Because the mitigation project rule seems wise to us, because the Environmental Protection Agency has been given primary responsibility for enforcing the Clean Water Act on behalf of the United States (*see* 33 U.S.C. § 1319), and because the United States Supreme Court has long recognized that considerable weight should be given to an executive department's construction of a statutory scheme it is entrusted to administer (*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)), we will require that the mitigation project rule be met before approving the proposed consent decree in this case. The issue, therefore, is whether the proposed consent decree in this case meets the mitigation project rule.

■ The pertinent portion of the proposed consent decree reads as follows:

IX. CIVIL PENALTIES AND PAYMENT OF ATTORNEY'S FEES

12. In full satisfaction of PEDF's claims for violations as alleged in the Complaint and Amended Complaint filed herein through the date of lodging of this Decree, defendant Bellefonte shall, within thirty (30) days after the entry of this Consent Decree, tender:

(a) Into an escrow account $35,000, and hold and maintain such funds with principal and interest to be used by Trout Unlimited, Spring Creek Chapter, for the purposes of fulfilling the goals of the CWA [Clean Water Act]. Trout Unlimited shall select and submit projects to Bellefonte and request disbursement of the funds necessary to effectuate such projects. Bellefonte shall disburse the funds necessary for the projects within forty-five (45) days of submission by Trout Unlimited unless Bellefonte believes said projects are beyond the terms of the CWA. If so, Bellefonte must submit the matter to dispute resolution within the same forty-five (45) day period.

We are of the view that the above-quoted portion of the proposed consent decree does not comply with the mitigation project rule. In fact, a careful reading of the above-quoted provision from the proposed consent decree reveals that there is no requirement that the $35,000.00 be used for projects in, next to, or close to Spring Creek and there is no explicit requirement that the $35,000.00 be used for a project which "closely addresses the environmental effects of the defendant's violation[s]." We decline to approve the proposed consent decree because the provision setting forth the use of the aforementioned $35,000.00 does not require that this money be used in conformity with the mitigation project rule.

If the parties wish to redraft paragraph 12(a) and resubmit the proposed consent decree as amended within the time specified in the dispositive portion of this order, and if the parties are unable in that time to devise a suitable mitigation project which is in conformity with the mitigation project

rule, the parties may consider specifying certain parameters for the mitigation project and also inserting a provision that the precise project will be determined in the first instance by an independent person or entity, such as an academician at the Pennsylvania State University, and the project submitted to the Court for final approval.

Still pending in this case are Bellefonte's motion filed July 29, 1988, for summary judgment and The Foundation's motion filed October 5, 1988, for partial summary judgment. We shall stay all action on these two motions for a reasonable time in order to give the parties time to submit a proposed amended consent decree if they so desire.