**FRIENDS OF THE EARTH, et al., Plaintiffs,**

v.

**ARCHER DANIELS MIDLAND CO., et al., Defendants.**

No. 84–CV–413.

United States District Court, N.D. New York.

Jan. 6, 1992.

Terris Edgecombe Hecker & Wayne (Bruce J. Terris, James M. Hecker, Kathryn A. Bleecker, of counsel), Washington, D.C., Davoli McMahon & Kublick (Jan S. Kublick, of counsel), Syracuse, N.Y., for plaintiffs.

Richard B. Stewart, Asst. Atty. Gen., U.S. Dept. of Justice, Land & Natural Resources Div., Policy, Legislation & Special

Litigation Section, (Charles J. Sheehan and David Drelich, of counsel), U.S.E.P.A., Washington, D.C., for U.S.

Berle Kass & Case, (Jean M. McCarroll, of counsel), New York City, for Archer Daniels Midland Co.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This motion for reconsideration asks the court to once again examine the propriety of a proposed consent decree between plaintiffs and the only remaining defendant, Archer Daniels Midland Company ("ADM").[1] The proposed consent decree,[2] if approved by the court, would finally settle this action brought pursuant to the federal Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq.

### Background

In 1984 Friends of the Earth ("FOE"), the Atlantic States Legal Foundation, and Richard Fedele, commenced the present action pursuant to the citizen suit provision of the CWA. See 33 U.S.C. § 1365(a).[3] The complaint alleges that the defendants repeatedly violated the terms and conditions of their National Pollutant Discharge Elimination System/State Pollutant Discharge Elimination System permit ("the permit") while operating a corn processing plant in Montezuma, New York. On June 16, 1986, among other things, this court found ADM liable for those permit violations which occurred between June 12, 1982, and May 31, 1984.

Later, in July, 1988, relying exclusively upon *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), this court granted ADM's motion for summary judgment on mootness grounds with respect to plaintiffs' claims for injunctive relief. *Friends of the Earth v. Archer Daniels Midland Co.*, Record at 52 (No. 84–CV–413). The court based its mootness finding on several factors including the following undisputed facts: (1) there had been no exceedances of defendants' permit since 1986; (2) the plant had been shut down since April, 1986; and (3) ADM had no intention of resuming operation of that plant. *Id.* at 51–52. The court specifically left open the issue of plaintiffs' claim for civil penalties, however. Again relying upon *Gwaltney*, the court concluded that "[t]he issue of civil penalties is not rendered moot simply because the injunctive relief claim has been [rendered moot]." *Id.* at 53. In its oral decision, the court added that the determination as to "[w]hether ADM will ultimately be required to pay such penalties cannot be made at this juncture." *Id.*

On August 25, 1989, after the court's finding of liability, the parties submitted a proposed consent decree to the court, as well as to the United States Attorney General and the administrator of the Environmental Protection Agency, as required by 33 U.S.C. § 1365(c)(3).[4] That proposed consent decree required ADM to pay a total of $25,000.00 to three private environmental conservation organizations.[5] The decree further required ADM to pay $125,000.00 to plaintiffs for their litigation costs, including attorneys' fees, expert witness

---

1. Defendants, Nabisco Brands, Inc. and Clinton Corn Processing Company, were previously dismissed as parties to this action.

2. The terms proposed consent decree and consent decree are used interchangeably herein.

3. Very basically, that provision permits citizens to bring actions for violations of the CWA.

4. Section 1365(c)(3) of the CWA, entitled "Protection of the interests of the United States," provides:

    Whenever any action is brought under this section in a court of the United States, the plaintiff shall serve a copy of the complaint

on the Attorney General and the Administrator. No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator. 33 U.S.C. § 1365(c)(3) (West Supp.1991).

5. The payments and the organizations were designated as follows: (1) $10,000.00 to The Isaak Walton League of America; (2) $7,500.00 to World Resources Institute; and (3) $7,500.00 to Defenders of Wildlife.

fees, and expenses. By its terms, the proposed consent decree required court approval.

■ The United States filed "objections" to the proposed consent decree.[6] Basically, the Government requested that the court not approve of and enter the proposed consent decree because it "[w]as greatly at odds" with the CWA. Objections of the United States to the Proposed Consent Judgment Pursuant to 33 U.S.C. § 1365(c) at 1. ("Objections".) The Government's objections were twofold. First, it objected on the basis that the proposed consent decree did not provide for the payment of a civil penalty to the United States Treasury, which the Government believed, and continues to believe, is mandated under the CWA. Second, the Government objected because, in its view, there was not a sufficient nexus between the private environmental organizations which were to receive money under the proposed consent decree, and the environmental harm caused by defendant ADM. Plaintiffs and ADM adamantly maintained that payment of a civil penalty to the United States Treasury (the "Treasury") was not required, and, that the decree should be approved because it complied with the basic goals of the CWA.

After considering the respective positions of the parties and of the Government, the court held that although the payments were "civil penalties" within the meaning of the CWA, the legislative history to some of the most recent amendments to the CWA indicated that those payments were not required to be paid only to the United States Treasury. *Friends of the Earth,* No. 84–CV–413, slip op. at 6, 1990 WL 104017 (N.D.N.Y. July 19, 1990). The court did not agree that the payments could be made to wholly private entities, though. Instead, relying upon *Sierra Club, Inc. v. Electronic Controls Design, Inc.,* 703 F.Supp. 875 (D.Or.1989), where the court refused to allow payments to private environmental organizations, but did approve of payment to a state environmental program, this court suggested payment to a state environmental project. This court further held that there was no requirement that the payments be related to remedying the harm caused by ADM. The court therefore denied approval of the proposed consent decree, observing that modification of the consent decree in a manner consistent with *Sierra Club I* would provide an "appropriate settlement." *Friends of the Earth,* slip op. at 11.

Shortly after the court issued that decision, on August 1, 1990, the Ninth Circuit Court of Appeals reversed the district court's decision in *Sierra Club I.* The Ninth Circuit held, among other things, that because "[n]o liability was ever judicially established," payments under the proposed consent decree were not civil penalties, and thus, *could* be paid to private environmental organizations. *Sierra Club, Inc. v. Electronic Controls Design, Inc.,* 909 F.2d 1350, 1356 (9th Cir.1990) ("*Sierra Club II*"). Based upon that reversal, the parties herein moved for joint reconsideration of this court's July 19, 1990 order,

---

6. Section 1365(c)(3) is silent as to whether the Government has a right to submit objections to the court, or whether the court must consider such objections when deciding whether to approve a proposed consent decree under the CWA. *Atlantic States Legal Foundation, Inc. v. Simco Leather Corp.,* 755 F.Supp. 59, 60 n. 1 (N.D.N.Y.1991). At least one court has held, however, that in considering a proposed consent decree in a CWA citizen suit, a court, in its discretion may consider "comments" filed by the United States, even though it was not a party to such action. *Pennsylvania Environmental Defense Foundation v. Bellefonte Borough,* 718 F.Supp. 431, 434 (M.D.Pa.1989). In *Bellefonte Borough,* the court considered the Government's comments as an amicus brief, because if it had not done so, there would have been no adversarial presentation as to the propriety or wisdom of granting the proposed decree. *Id.* at 435.

This court concurs with that view. Thus, based upon the court's reasoning in *Bellefonte Borough,* and the fact that the parties did not contest the Government's filing of objections, the court considered the Government's objections in deciding whether to approve the proposed consent decree. Obviously the court contemplated doing the same on this reconsideration motion when it specifically requested the Government to provide supplemental briefing on the issues raised herein.

seeking court approval of the original proposed consent decree.[7]

To further enlighten the court on the civil penalties issue, in April, 1991, the court had a conference with the parties, and the Government participated by telephone. At that conference, the court also expressed some concern about whether the proposed amount of payment of $25,000.00 was adequate, and whether the court had an independent obligation to assess the sufficiency of that amount. Following the conference, at the court's request, the parties, as well as the Government, filed supplemental memoranda of law on the issue of whether the court should approve payments under the proposed consent decree to private environmental organizations.

The court has now had an opportunity to carefully review all of the briefing provided to it on these issues. The court has also undertaken a thorough examination of the relevant case law; and, for the reasons set forth herein, the court is still unable to approve of the proposed consent decree in its present form.

### Discussion

The motion for reconsideration is based upon the parties' contention that the issues raised herein are identical to those raised in *Sierra Club II*. The parties therefore urge modification of this court's previous decision so as to replicate the outcome in *Sierra Club II;* that is to allow payments to be made to private environmental organizations, as opposed to a state environmental agency or program. While this court agrees that reconsideration is appropriate in light of *Sierra Club II*, it concludes that this case stands in a significantly different legal posture than did *Sierra Club*, so as to require a different outcome.

■ Before turning to a closer examination of the proposed consent decree, the court reminds the parties that before entering such a decree, a district court "[m]ust be certain that the decree 1) 'spring[s] from and serve[s] to resolve a dispute within the court's subject-matter jurisdiction,' 2) 'come[s] within the general scope of the case made by the pleadings,' and 3) 'further[s] the objectives of the law upon which the complaint was based.'" *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir.1989) (*quoting Local Number 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986)) (*"Firefighters"*). Additionally, the Second Circuit has recognized, as have other courts:

In deciding whether to approve agreements calling for entry of either a consent judgment or a settlement judgment, a court normally has only a limited role so long as the dispute affects only private interests.... Though the judge does not 'merely sign on the line,' ..., he or she normally makes only the minimal determination of whether the agreement is appropriate to be accorded the status of a judicially enforceable decree. The court has a larger role, however, where a consent judgment or a settlement judgment resolves ..., ... any suits 'affecting the public interest,' ....

*Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir.1986) (citations omitted). Thus, because the present case, brought under the citizen suit provision of the CWA, "affects public interest," the court cannot simply sign the consent decree on the dotted line. Rather, among other things, the court "must be satisfied of the fairness of the settlement." *See id.*

In the present case, there is no dispute that the first two factors articulated in *Firefighters* are satisfied. The proposed consent decree, involving as it does the resolution of a CWA case, obviously resolves a matter within this court's subject matter jurisdiction.[8] The proposed consent

---

7. The parties do not indicate upon which subsection of Fed.R.Civ.P. 60(b) they are relying. After enumerating various reasons which may warrant relieving a party from a final judgment, order, or proceeding, Rule 60(b)(6) allows such relief "... [for] any other reason justifying relief from the operation of the judgment." Fed. R.Civ.P. 60(b)(6). This appears to the court to be the most appropriate subsection, given the posture of this case, and thus the court will deem this motion to be brought pursuant to that subsection.

8. Section 505 of the CWA vests this district court with jurisdiction to consider CWA citizen

decree also comes within the scope of the pleadings in that it addresses the issue of payment of a penalty—one type of relief directly sought in the complaint. It is the third *Firefighters* factor which the court finds troublesome in this setting.

■ The court is concerned that approval of the consent decree in its present form would not further the objectives of the CWA. In particular, fairly recent case law makes it clear that once there has been a judicial finding of liability, a court has no choice but to impose a civil penalty. As previously mentioned, the Ninth Circuit expressly adopted that view in *Sierra Club II*, explaining more fully:

> [w]e agree with the district court that if the payments required under the proposed consent decree are civil penalties within the meaning of the Clean Water Act, they may be paid only to the U.S. Treasury. We disagree, however, that the payments are civil penalties. No violation of the Act was found or determined by the proposed settlement judgment. When a defendant agrees before trial to make payments to environmental organizations without admitting liability, the agreement is simply part of an out-of-court settlement which the parties are free to make.

*Sierra Club II*, 909 F.2d at 1354. That holding is consistent with § 309(d) of the CWA which unequivocally states that "[a]ny person who violates ..., ... any permit condition or limitation ..., *shall* be subject to a civil penalty not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d) (West Supp.1991) (emphasis added).

■ In addition to the Ninth Circuit in *Sierra Club II*, two other Circuit Courts interpreting § 309(d) have held that once a violation has been found, a court is obligated to impose a penalty. *See Atlantic States Legal Foundation v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir.1990) ("This language makes clear that once a violation has been established, some form of penalty is required"); *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 697 (4th Cir.1989) ("This language coupled with § 1365(a) indicates that, once an ongoing violation is shown, the court is virtually obligated to assess penalties").[9] It appears to the court that if it were to approve of the consent decree as presently worded, such decree would contravene the objectives of the CWA. It is well settled that the parties may not agree to take action, even in the form of a consent decree, which conflicts with or violates the very statute upon which the complaint is based. *See Firefighters*, 478 U.S. at 526, 106 S.Ct. at 3077. Thus, because the relief sought in the proposed consent decree (payment to private environmental organizations) conflicts with certain provisions of the CWA and the case law construing that Act, once again, but this time for different reasons, the court cannot give its imprimatur to the proposed consent decree.

The parties make several attempts to persuade the court that this case is like *Sierra Club II*, and therefore payments to private environmental organizations, such as those listed in the proposed consent decree, are proper. First, the parties contend that the grant of partial summary judgment here was not a final judgment in that ADM could either seek modification from this court[10] and/or eventually appeal to the Second Circuit. Based upon that premise, the parties argue that no liability has been judicially established here, and thus this case is identical to *Sierra Club*.

suit actions, such as the present one. *See* 33 U.S.C. § 1365(a) (West Supp.1991).

9. *See generally Gwaltney of Smithfield*, 484 U.S. at 53, 108 S.Ct. at 379 ("If the citizen prevails in such an action, the court may order injunctive relief and/or impose civil penalties payable to the United States Treasury"); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14 n. 25, 101 S.Ct. 2615, 2623 n. 25, 69 L.Ed.2d 435 (1981) ("Under the FWPCA, civil penalties, payable to the Government, also may be ordered by the court"); *Public Interest Research Group, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 82 (and cases cited therein) (3rd Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

10. ADM is assuming that there are no procedural barriers, such as time limitations, to the seeking of such relief.

The parties are correct that generally an order which grants partial summary judgment cannot be the sole basis for an appeal, since it is nonfinal. *See New York v. Exxon Corp.*, 932 F.2d 1020, 1023 (2d Cir.1991) (a grant of summary judgment leaving open the issues of damages and affirmative defenses is only partial, and therefore not appealable) (*quoting Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976)). The court is not convinced however that the finality, or lack thereof, of the order finding liability should enter into the court's analysis of the civil penalty issue. In the court's opinion, the parties are reading into *Sierra Club II* a finality requirement which simply is not there. The Ninth Circuit did not say that civil penalties must be imposed once judicial liability is *finally* established. Rather, the obvious implication from *Sierra Club II* is that once judicial liability is established, a civil penalty is mandatory.[11]

The undeniable fact remains that in the present case the court has already determined liability. Thus, even if ADM were to choose not to enter into a consent decree, and await judicial resolution of the damages issue, that would not suspend or terminate the existence of the liability finding. Thus, in the court's view, the fact that the judicial finding of liability is not final is of no consequence here.

The parties also contend that, as in *Sierra Club II*, the proposed consent decree contains no admission of liability by ADM, and they should thus be free to enter into such decree on their own terms. The absence of an admission by ADM in the consent decree, however, is immaterial given the court's determination that liability exists. The parties cannot circumvent the civil penalty obligation by simply ignoring the court's finding of liability, or by re-fusing to acknowledge such finding in the form of an admission. Moreover, as the court observed in its earlier decision, the proposed consent decree explicitly states that the payments are intended to serve as a "penalty" to ADM for its statutory violations. *Friends of the Earth*, No. 84–CV–413, slip op. at 9, 1990 WL 104017 (N.D.N.Y. July 19, 1990).[12] The decree also states:

> "[t]he sum set forth in the preceding paragraph shall completely discharge defendant from any liability under 33 U.S.C. § 1365 arising from the *violations alleged in the Complaint and found by this Court in its Memorandum Decision and Order of June [16], 1986 ...*"

Proposed Consent Decree at 3 (emphasis added). Thus, although not determinative, the court notes that from all of the foregoing, it seems that the parties, at least when the consent decree was initially drafted, recognized that ADM has an obligation to pay a civil penalty.

Finally, as previously discussed, it is well established that civil penalties must be paid to the United States Treasury. Therefore, because the court has determined that civil penalties are required here, the parties have no choice, even in a consent decree, but to make those penalties payable to the Treasury. That is especially so given the sound reasoning of the court in *United States v. Roll Coater, Inc.*, 21 Envtl.L.Rep. 21073, 1991 WL 165771, 1991 U.S.Dist. LEXIS 8790 (S.D.Ind.1991), a case relied upon by the Government herein. In *Roll Coater*, following a bench trial where the court found CWA violations, it imposed civil penalties payable only to the Treasury.

As in the present case, the Government in *Roll Coater* argued that all penalties assessed pursuant to the CWA had to be paid to the Treasury. Roll Coater argued,

---

11. In *Sierra Club II*, the parties filed a Stipulation of Entry of a Consent Judgment *before* any finding of liability and the defendant did not admit liability in that stipulation.

12. The proposed consent decree specifically provides:

> [w]hereas, plaintiffs and defendant, by their authorized representatives and without trial or final adjudication of the issues of fact or law with respect to plaintiffs' remaining claims, consent to the entry of this Consent Decree (Decree) to resolve all of plaintiffs' remaining claims against defendant, *including the civil penalties for all violations which occurred from June 12, 1982, to the present ...*

Proposed Consent Decree at 2 (emphasis added).

on the other hand, that the court, in the exercise of its equitable jurisdiction, could allow other forms of restitution in the form of payments to support private environmental projects. Although the court agreed with that general proposition advanced by Roll Coater, it declined to allow any other form of restitution in that case because the claim for injunctive relief had been dismissed. Therefore, the court reasoned that "[w]ithout this claim for injunctive relief, the Court lacks equitable jurisdiction to grant Roll Coater's request for an alternative remedy." *Id.* at 24. Based upon the court's reasoning in *Roll Coater*, this court has some reservations as to whether it would be a proper exercise of its jurisdiction to allow plaintiffs to make payments to private environmental organizations when there are no claims for injunctive relief remaining.[13]

■ The court offers one last observation with respect to the necessity of a civil penalty here. In its supplemental memorandum of law, ADM requested that, in the alternative, the court allow the parties to simply settle out of court. In support of that request for alternative relief, ADM relies upon a portion of a transcript in the case of *Connecticut Fund for the Environment v. The Upjohn Co.*, No. N85–349, slip op. (D.Conn.1990).[14] Apparently the court in *Connecticut Fund* allowed the parties to enter into a settlement agreement in a CWA case without notifying the United States Attorney General. *Id.* at 832. Even assuming that that procedure comports with the CWA, (and the court has serious reservations as to whether it does), *Connecticut Fund* stands in marked contrast to the present case. In *Connecticut Fund*, the United States had not been made aware of that case at any time. Here, on the other hand, the Government has been aware of this case at least since it first received notice of the proposed consent decree in August, 1989. And in fact, the Government filed objections and a supplemental memorandum of law, and has been an active participant since the possibility of a consent decree first arose. So, the parties cannot now seek to reach an out of court settlement, in an effort to evade the valid concerns raised by the Government herein.

Although the court has now determined that ADM must pay a civil penalty, the issue of the amount of such penalty is still unresolved. At the conference held this past spring, the court expressed some concern whether it should undertake an independent evaluation of the penalty amount, and the scope of such evaluation, if any. It is clear from reading the supplemental memoranda of law submitted by ADM and by the Government that they basically agree: in reviewing this proposed consent decree, the court need only ensure itself that payments thereunder are fair and reasonable. The court need not undertake the type of detailed analysis contemplated by 33 U.S.C. § 1319(d);[15] and, in fact, the court cannot undertake such an analysis as this juncture because, as ADM points out, the factual evidence required thereunder is not before the court. Requiring such evidence to be produced would transform this supposedly limited settlement into a full-blown hearing on the issue of relief, something the parties presumably tried to avoid by agreeing to a consent decree in the first place.

**13.** As an aside, one other aspect of *Roll Coater* is worthy of mention. Roll Coater also sought to evade the civil penalty requirement by requesting that the court not characterize those payments as "civil penalties." The court in *Roll Coater* refused to adopt that suggestion, explaining that it could not imagine another way to characterize the payments therein, other than as an injunction or a civil penalty.

Similarly, in the proposed consent decree now before the court, in an apparent attempt to circumvent the civil penalty requirement, in one section of that decree, the parties refer to the proposed payments as "civil payments," rather than as civil penalties. As in *Roll Coater*, this court is of the view that the civil penalty requirement cannot be sidestepped simply by altering the manner in which the proposed payments are characterized.

**14.** That case is attached to ADM's supplemental memorandum of law as exhibit F.

**15.** That statute sets forth certain factors which courts must consider in determining the amount of a civil penalty thereunder.

The court agrees that the scope of its review with respect to the actual dollar amount is relatively limited in light of the procedural posture of this case. After reviewing the record in this case, including the most recent submissions pertaining directly to the civil penalties issue, and taking into account the representations made by counsel during the course of the April, 1991, conference, the court believes that although the penalty *could* have been larger, it is sufficient under the unique facts presented herein. That view is compatible with the view taken by the district court in *Sierra Club v. Coca–Cola Corp.*, 673 F.Supp. 1555 (M.D.Fla.1987), a case relied upon by both ADM and the Government. In that case the Sierra Club contended that the amount of the civil penalty in the proposed consent decree was too small. Even though the court agreed that "[t]he civil penalty could have been larger, perhaps much larger," it nonetheless approved of that decree. *Id.* at 1557. In so doing, the court reasoned: "[t]he Court is unable to conclude that the $50,000 fine will denigrate the seriousness of Coca–Cola's past violations, encourage future violations, or in any other way disserve the goals of the Clean Water Act." *Id.*

Based upon its knowledge of the case, albeit limited when compared with that of the parties and the Government, it appears to the court that a payment higher than $25,000.00 would certainly have been proper here. Nevertheless, as in *Sierra Club v. Coca–Cola,* the court is unable to find that a $25,000.00 civil penalty will "denigrate the seriousness" of ADM's past violations. *See, id.* Nor can the court conclude that in this case a $25,000.00 civil penalty would in any other way disserve the goals of the CWA. Therefore, if the parties still desire to resolve this action by way of a consent decree, they are free to file an amended proposed consent decree providing for payment of a civil penalty to the United States Treasury in the amount of $25,000.00.

To summarize, upon reconsideration, the court denies approval of the consent decree in its current form. Revision of the consent decree as just described, however, would be a proper and acceptable vehicle for resolving this action once and for all.

IT IS SO ORDERED.