**HAWAII'S THOUSAND FRIENDS, LIFE OF THE LAND, INC., James E. Hearst, Betty Hearst, John Weil, Victoria Creed, Richard A. Wheelock, Patricia Bostwick, Patrick Tane, Philip M. Tansey, and Carolyn Tansey, Plaintiffs,**

v.

**The CITY AND COUNTY OF HONOLULU, the Department of Public Works of the City and County of Honolulu, John Does 1–5, Jane Does 1–5, Doe Entities 1–5 and Doe Governmental Entities, Defendants.**

Civ. No. 90–00835 DAE.

United States District Court,
D. Hawaii.

July 23, 1992.

---

2. The final decision awarded attorney's fees for an administrative hearing. *Moore*, 907 F.2d at 176.

Fred Paul Benco, Linda S. Birn, Honolulu, Hawaii, for plaintiffs.

Ronald B. Mun, Sandra A. Simms, Deputy Corp. Counsel, Office of the Corp. Counsel, Honolulu, Hawaii, for defendants.

## ORDER DENYING CITY'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

Defendants City and County of Honolulu and the Department of Public Works of the City and County of Honolulu's ("City") motion to dismiss, or in the alternative, summary judgment and plaintiffs' motion for partial summary judgment came on for hearing before this court on July 20, 1992. Kathleen Ho, Esq., appeared on behalf of the City and Fred Benco, Esq., and Linda Birn, Esq., appeared on behalf of the plaintiffs.[1] The court, having considered the arguments made at the hearing on these matters and having reviewed the moving papers and records and files herein, hereby DENIES the City's motion to dismiss, or in the alternative, for summary judgment, and GRANTS plaintiffs' motion for partial summary judgment.

## BACKGROUND

In October 1989, plaintiffs sent a letter to the Director of the Department of Public Works for the City and County of Honolulu, the Director of Hawaii's State Depart-

---

1. Plaintiffs Patricia Bostwick, James Hearst, and Betty Hearst were dismissed with prejudice on August 28, 1991.

ment of Health, the Regional Administrator of the Environmental Protection Agency ("EPA"), and the Administrator for the EPA, announcing their intent to sue the Hawaii Department of Public Works ("DPW") and the Hawaii Department of Health ("DOH") for violating the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.* The letter alleged that for several years, the City's Enchanted Lakes Pumping Station ("ELPS") discharged raw sewage into Kaelepulu Stream, Enchanted Lakes, and Kailua Bay. Their letter further stated that they sought 1) enforcement of EPA effluent standards, 2) installation of larger pipes to handle overflows, 3) larger pumps and a back-up generator at the ELPS, 4) emergency storage tanks, 5) implementation of a water quality monitoring program, 6) warning systems, and 7) a public education program on water-related illnesses.

In December 1989, DOH filed with the State's Division of Wastewater Management, a "Notice And Finding Of Violations" at the ELPS. The findings declared that on March 3, April 4, and April 8–10, of 1989, a total of 37,550 gallons of raw sewage were discharged into Kaelepulu Stream after bypasses at the ELPS.[2] The City does not dispute the Notice And Finding of Violations. City's Motion To Dismiss at 10.

In April 1990, DOH and the City entered into a Consent Agreement pursuant to DOH's Notice and Finding Of Violations.[3] The agreement declared that the City was to pay a fine to the State, provide water impact studies, and make improvements to sewer systems.[4] Plaintiffs, however, allege that they had no opportunity to participate in the non-public hearings between the City and DOH, and further claim that the resulting Consent Agreement is inade-

quate to prevent future sewage discharges at the ELPS.

In December 1990, plaintiffs filed an amended complaint against the City under a citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, seeking a declaratory judgment, an injunction order, costs, and an order requiring the City to comply with their requests made in their intent to sue letter of October 1989. Plaintiffs state they only seek to prevent future discharges from the ELPS. Plaintiffs' Memorandum In Opposition at 27.

The City seeks a dismissal with prejudice of the citizen suit, or in the alternative, summary judgment claiming that this private suit is moot because of the Consent Agreement. Plaintiffs seek partial summary judgment as to liability against the City for discharging unprocessed waste without a permit.

## DISCUSSION

### I. Standard of Review

Where matters outside a motion for judgment on the pleadings are presented to the court, the motion is reviewed as one for summary judgment. Fed.R.Civ.P. 12(c).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). If the moving party meets its

2. Discharges also occurred on December 19, 1987, and on January 1, 1988, but were not included in the DOH's Notice and Finding Of Violations. Additional sewage bypasses occurred on March 19, 27, and 29, of 1991. The total amount of raw sewage discharged from the foregoing incidents at the ELPS were 232,400 gallons.

3. Filed with the State's Division Of Wastewater Management on May 1, 1990.

4. Water impact studies were to be made on Kaelepulu and Kawainui Streams. Sewer system improvements included planning and constructing the Akuma Street Relief Project, analyzing the Ahuimanu/Kaneohe/Kailua Wastewater Treatment Plant, and designing and constructing modifications to the Kailua Sewage Treatment Plant.

burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire and Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

II. City's Motion To Dismiss/Summary Judgment

A. *Plaintiffs' Citizen Suit Is Not Barred By The Consent Agreement As Enforcement Actions By The Government Were Not Pursued In A Court Of The United States*

■ The main issue is whether DOH's enforcement actions by investigating and finding violations against the City and the resulting Consent Agreement between the City and DOH bars a citizen's lawsuit filed under the Clean Water Act.

The Clean Water Act states that any citizen may file a civil action against any person or government instrumentality alleged to be in violation of an effluent standard. 33 U.S.C. § 1365(a)(1). A citizen suit, however, cannot be initiated where the plaintiff fails to give a 60–day notice of intent to sue letter to the violator and appropriate government agencies prior to filing suit, or where the State "has commenced and is diligently prosecuting a civil or criminal action in court" against the violator. 33 U.S.C. § 1365(b)(1)(A), (B).

In *Sierra Club v. Chevron U.S.A.*, 834 F.2d 1517 (9th Cir.1987), the court directly addressed the issue of whether the California Water Control Board's ("Board") enforcement action against Chevron U.S.A.

Inc. ("Chevron") barred Sierra Club's subsequent citizen suit against Chevron under the Clean Water Act.[5] In affirming the lower court's denial of Chevron's motion to dismiss or, alternatively, for summary judgment, the Ninth Circuit observed that 33 U.S.C. § 1365(b)'s reference to *courts* was "unambiguous." *Id.* at 1525. The court noted that an administrative proceeding was not an action in a court and, thus, held that a citizen suit filed under section 1365 was not precluded where an enforcement action was nonjudicial. *Id.* The court further observed that while citizen suit provisions in other acts barred private suits where the government was either prosecuting the violator in court or through an administrative proceeding,[6] the language of the Clean Water Act was exclusively limited to court actions. *Id.*

In the present case, the City argues that DOH's enforcement actions of investigating and finding violations against it and the subsequent Consent Agreement between the City and DOH bar plaintiffs' citizen suit. The City relies on *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), for the proposition that citizen suits under the Clean Water Act become unnecessary once the government commences enforcement actions against the violator.

In *Gwaltney*, the Supreme Court addressed the issue of whether section 1365 of the Clean Water Act allowed citizen suits for wholly past violations. ITT–Gwaltney ("Gwaltney") was issued an NPDES permit[7] by the Virginia State Water Control Board allowing the discharge of certain pollutants from its meat packing plant into a nearby river. Gwaltney was later sued by environmental groups under the Clean Water Act after repeatedly vio-

---

**5.** The Board ordered Chevron to cease and desist from violating its permit limitations and to build a new effluent diversion facility. It further imposed a fine of $58,000 against Chevron for past violations.

**6.** Toxic Substance Control Act (15 U.S.C. § 2619(b)(1)(B)), Endangered Species Act (16 U.S.C. § 1540(g)(2)), Marine Protection, Research and Sanctuaries Act (33 U.S.C.

§ 1415(g)(2)), Resource Conservation and Recovery Act (42 U.S.C. § 6972(b)).

**7.** Although the Clean Water Act prohibits the discharging of pollutants into navigable waters, the Act's section on National Pollutant Discharge Elimination System (NPDES) allows the EPA to issue permits authorizing the discharge of certain pollutants in accordance with specified guidelines. 33 U.S.C. § 1342.

lating effluent limitations for four years. In remanding the case, the Supreme Court held that while section 1365(a) does not permit citizen suits for past violations, it did confer jurisdiction over suits where a citizen-plaintiff made a "good-faith allegation of continuous or intermittent violation." *Id.* at 64, 108 S.Ct. at 378. It reasoned that the act's requirement of a 60–day wait period after giving notice of an intent to sue was to address present or future violations, and not past incidents. *Id.* at 60, 108 S.Ct. at 378.

Turning to the present case, the court finds no merit to the argument that DOH's finding of violations and the resulting Consent Agreement bar plaintiffs' citizen suit. First, although enforcement actions were taken by DOH against the City, those acts were administratively initiated and filed with the State's Division of Wastewater Management. Review of the records indicate that plaintiffs' citizen suit is the first enforcement action filed and pursued against the City in a court of the United States. 33 U.S.C. § 1365(b) clearly states that citizen suits cannot be maintained if the government has initiated an action "in a court" of the United States.

■ Hence, in applying the plain language of section 1365(b) and its interpretation by the Ninth Circuit in *Sierra Club*, plaintiffs' present suit cannot be dismissed as DOH's enforcement actions were not initiated in a court of the United States. Unless there exists clearly expressed legislative intentions to the contrary, the words of a statute are conclusive. *Hallstrom v. Tillamook County*, 493 U.S. 20, 28, 110 S.Ct. 304, 309, 107 L.Ed.2d 237 (1989) (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The court finds no legislative intention contrary to the plain language of section 1365(b).

Second, the City's reliance on *Gwaltney* is misplaced and, therefore, inapplicable. There, the sole issue was whether the Clean Water Act allowed citizen suits for wholly past violations. Here, the court is faced with the question of whether the Clean Water Act bars citizen suits not judicially enforced.[8] Although *Gwaltney* discusses *which* violations may be the basis for a citizen suit, it does not address *where* enforcement actions by government agencies must be pursued.[9]

## B. The Court Has Subject Matter Jurisdiction

The City next argues that plaintiffs' citizen suit should be dismissed because this court lacks subject matter jurisdiction to hear the case. The court finds no merit to this argument as plaintiffs are relying on a Congressional statute specifically enacted to allow private citizens to sue violators of the Clean Water Act. The plain language of 33 U.S.C. § 1365(b) states that the district court has jurisdiction to enforce effluent limitations and impose appropriate civil penalties against violators.[10] Hence,

---

8. Although plaintiffs' citizen suit cites past discharge offenses, they seek to prevent *future* discharges from the ELPS. As evidenced from records before the court, untreated sewage continues to discharge from the ELPS and there further exists the potential for future discharges. *See supra* note 2.

9. City also relies on: *U.S. EPA v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir.1990), for its argument that *res judicata* and collateral estoppel compel the dismissal of a citizen suit when the EPA initiates enforcement actions after the suit; and *Pennsylvania Environmental Defense Foundation v. Bellefonte Bourough*, 718 F.Supp. 431 (M.D.Pa.1989), and *Hudson River Fishermen's Assoc. v. County of Westchester*, 686 F.Supp. 1044 (S.D.N.Y.1988), for the proposition that responsibility to ensure the Clear Water Act

is complied with lies with the government. The court finds that the aforementioned cases are distinguishable. In *Green Forest* and *Hudson River,* the government agencies sought enforcement action against the violator in court. In *Bellefonte Bourough,* the violator and private interest group were able to agree on a consent agreement but objected to the government's comments on it. In the present case, the government agency did not pursue its enforcement action in a court nor is it established that plaintiffs participated in the Consent Agreement.

10. 33 U.S.C. § 1365(a) states that the "district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as

this court has subject matter jurisdiction over plaintiffs' citizen suit.

## C. *There Is No Indispensable Party*

■ The City also argues that DOH, Enchanted Lakes Community Association, and Bishop Estate are indispensable parties to plaintiffs' action and, therefore, their absence warrant dismissal of the citizen suit.[11] Rule 19(a) of the Federal Rules of Civil Procedure requires that a person must be joined if in her absence, 1) complete relief cannot be accorded to the present parties; or 2) the person claims an interest in the action and, as a practical matter, disposition of the action in her absence may impair her ability to protect her interests or create a substantial risk to the present parties by subjecting them to multiple or inconsistent obligations. If an absent person qualifies under either of the above two categories, but cannot be joined, the court must decide "in equity and good conscious" whether the case may proceed without her, or must be dismissed as the absent party is considered indispensable. Fed.R.Civ.P. 19(b).

In the present case, complete relief may be accorded without the above three parties as plaintiffs primarily seek to enjoin the *City* from discharging unprocessed sewage in nearby waters. Second, the three unnamed parties have not intervened nor asserted an interest in the present action since plaintiffs' filing of their citizen suit on November 23, 1990. Even if the parties were considered necessary, they may still be joined without disrupting this court's jurisdiction. The court, therefore, finds that DOH, Enchanted Lakes Community Association, and Bishop Estate are not indispensable parties and that plaintiffs' citizen suit may proceed without them.[12]

For the foregoing reasons, the court denies the City's motion to dismiss, and further denies its alternative motion for summary judgment as the City has failed to show it is entitled to judgment as a matter of law.

## III. Plaintiffs' Motion For Partial Summary Judgment

### A. *Unauthorized Waste Was Discharged At The ELPS Without A Proper NPDES Permit*

■ Plaintiffs move this court for an order that the City violated the Clean Water Act as it is undisputed the City discharged raw sewage into Kaelepulu Stream and beyond without an NPDES permit. The City argues that while the ELPS does not itself have an NPDES permit, the ELPS is covered under Kailua Wastewater Treatment Plant's ("Kailua Plant") NPDES permit.[13] City's Memorandum In Opposition at 3. The court does not find this argument persuasive.

The government agency responsible for issuing NPDES permits states that the ELPS is under the jurisdiction of Kailua Plant's permit.[14] Review of Kailua Plant's NPDES permit, however, does *not* disclose any reference to the ELPS. Nonetheless, even if the ELPS is covered under Kailua Plant's NPDES permit, the permit only allows *treated* waste to be discharged and released only into Mokapu Ocean Outfall, Kailua Bay, and the Pacific Ocean. The ELPS, however, was not only discharging

---

the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title."

**11.** City alleges that Bishop Estate, owner of the lands in and around Kaelepulu pond, and the Enchanted Lakes Community Association are responsible for maintaining water outlets entering Enchanted Lakes.

**12.** The court finds no merit to City's reliance on literal definitions of "continuous" and "ongoing" from Webster's dictionary to support its additional argument that plaintiffs failed to establish that the City continuously caused sewage discharges and that these discharges created ongoing problems. The City also attempts to have certain paragraphs of plaintiffs' complaint dismissed. As City's motion is for dismissal, or in the alternative, summary judgment, this court must decide whether plaintiffs' *entire* complaint must be dismissed. Fed.R.Civ.P. 7.

**13.** Issued on March 6, 1990, and to expire on December 31, 1993.

**14.** *See* affidavit of Denis Lau in City's Memorandum In Opposition to Plaintiffs' Motion For Partial Summary Judgment.

untreated sewage, but also discharging waste into Kaelepulu Stream, an unauthorized receiving area. The absence of any reference to the ELPS in Kailua Plant's NPDES permit, together with DOH's Notice of Finding and Violations, and the resulting Consent Agreement, support the conclusion that the ELPS's repeated discharge of raw sewage violated the Clean Water Act. The City has failed to persuade this court to conclude otherwise.[15]

### B. *Plaintiffs Have Standing*

■ The City next argues that plaintiffs lack standing. In *Lujan v. Defenders of Wildlife,* — U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), the Supreme Court held that for a plaintiff to have standing, the plaintiff must establish: injury in fact, causation between the injury and the conduct complained of, and a likelihood of redress.

Injury in fact occurs when there is an invasion of a legally-protected interest that is concrete and particularized, and actual or imminent. *Id.* The invasion must be personal and cannot be conjectural or hypothetical. *Id.* In the present case, plaintiffs' claim of injury to recreational, aesthetic, and environmental interests have been recognized as cognizable interests for standing purposes. *See Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972) (harm in aesthetics and ecology of an area is injury-in-fact). Furthermore, the possibility of facing another sewage bypass at the ELPS is actual and imminent as several bypasses again occurred almost one year after the Consent Agreement was filed. *See supra* note 2. The Notice and Finding of Violations noted that sewage bypasses at the ELPS occurred when rain water infiltrated

the sewer system and flooded its capacity limits.[16] The plaintiffs need not wait until it rains to establish actual and imminent injury.[17]

■ To show causation, the injury must be fairly traceable to the defendant's conduct. *Lujan* — U.S. at ——, 112 S.Ct. at 2136. It is undisputed that the ELPS discharged raw sewage into Kaelepulu Stream. Review of the records further reveal that between 1987 through 1991, the ELPS discharged almost 270,000 gallons of raw sewage into Kaelepulu Stream. Although other elements in Kaelepulu Stream may have contributed to plaintiffs' alleged injuries, the court finds that there exists sufficient evidence to show that the large amounts of raw sewage discharged from the ELPS is the cause of plaintiffs' claimed injuries.

■ The alleged injury must likely be redressed by a favorable decision.[18] *Id.* The City contends that even if a favorable decision for plaintiffs is granted, it would add virtually nothing as the Consent Agreement fulfills all of plaintiffs' requests. City's Memorandum In Opposition at 12. Upon comparing plaintiffs' improvement demands and the Consent Agreement, it is unclear whether the agreement will, in fact, prevent future discharges of raw sewage from the ELPS into nearby waters. As mentioned above, the ELPS again discharged raw sewage on several occasions almost one year after the Consent Agreement was filed. Under section 1365(a), this court has authority to enforce effluent standards, order the proper administrative body to perform an act, and impose any appropriate civil penalties. 33 U.S.C. § 1365(a). The plaintiffs, therefore, may have their alleged injuries redressed by a favorable decision.

---

**15.** City also argues that plaintiffs' intent to sue letter failed to meet federal regulations. The court finds that plaintiffs have complied with the necessary guidelines.

**16.** Notice and Finding of Violation at 1–2.

**17.** The "injury in fact" element also requires that the party seeking review by himself among the injured. *Lujan* — U.S. at ——, 112 S.Ct. at 2136 (citing *Sierra Club v. Morton,* 405 U.S. 727,

92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). The records are unclear whether members of Hawaii's Thousand Friends or Life of the Land have been injured. As for the individually named plaintiffs, the court finds that they have alleged sufficient personal injury.

**18.** Plaintiffs seek an injunction and requests that fines of $2,500 per day be imposed against the City until the ELPS is properly operating.

## CONCLUSION

For the reasons stated above, the court hereby DENIES the City's motion to dismiss, or in the alternative, for summary judgment, and GRANTS plaintiffs' motion for partial summary judgment.

IT IS SO ORDERED.