Bruce M. BETTIS, Mary Jo Bettis, Richard S. Ferrara and Christine Ferrara, Plaintiffs,

v.

TOWN OF ONTARIO, NEW YORK, Lillian B. Galvin, as Executrix of the Last Will and Testament of Edward F. Galvin, Robert Mogray, Albert Blythe, Ronald Kreiling, Anthony Malone, Hershey–Malone, n/k/a M.R.B. Group, P.C., Virginia Scully, n/k/a Virginia Scully–Hill, David Allyn and H. John Coleman, Defendants.

No. 92–CV–6106.

United States District Court, W.D. New York.

Sept. 17, 1992.

**1114**

Roy W. King, Rochester, N.Y., for plaintiffs.

Matthew J. Roe, Buffalo, N.Y., and Syracuse, N.Y., for defendants Town of Ontario, N.Y., Robert Mogray and Albert Blythe.

David Rothenberg, Geiger & Rothenberg, Rochester, N.Y., for defendant Lillian B. Galvin.

Roger W. Avery, Rochester, N.Y., for defendant Ronald Kreiling.

Theresa Conroy, Harter, Secrest & Emery, Rochester, N.Y., for defendants Anthony Malone and Hershey Malone.

Thomas A. McDermott, Rochester, N.Y., for defendant Virginia Scully.

H. John Coleman, pro se.

## DECISION AND ORDER

LARIMER, District Judge.

### BACKGROUND

Plaintiffs brought this action under the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1251 *et seq.*, to obtain injunctive relief, a declaratory judgment, and money damages. Defendants have moved for summary judgment under Fed.R.Civ.P. 56.[1]

Plaintiffs are two married couples who own property in the Scully Subdivision ("the subdivision") in the Town of Ontario, New York ("the town"). Two of the plaintiffs, Bruce and Mary Jo Bettis ("the Bettises") bought their lot in 1986; the other two plaintiffs, Richard and Christine Ferrara ("the Ferraras") bought theirs in 1990. Plaintiffs allege that in 1991 they discovered that the town had diverted a stream into certain pipes and ditches, causing erosion and damage to plaintiffs' property.

---

1. Actually, of the five separate motions filed by defendants, only that on behalf of defendants MRB and Malone is styled as a motion for summary judgment; the others are described as motions to dismiss under Rule 12(b). Plaintiffs' opposition papers describe all the motions as summary judgment motions, however, and plaintiffs have submitted voluminous matters outside the pleadings in opposition to the motions. I will therefore treat all the motions as motions for summary judgment under Fed. R.Civ.P. 56.

Plaintiffs also allege that the town knowingly approved construction of the subdivision within what they believe to be a wetlands area, but that the town did not obtain the necessary authorization for the subdivision from federal or state authorities. Plaintiffs claim that a developer, Edward F. Galvin (now deceased), filled in the area with the town's consent and cooperation but without state or federal permits.

Plaintiffs claim that when they bought lots within the subdivision and built homes there, they did not realize that the property had been a wetland. Plaintiffs contend that the land was not suitable for building and that defendants did not advise them of that fact.

Plaintiffs filed their complaint in federal court on March 12, 1992. Plaintiffs have sued the town and Lillian B. Galvin, Edward Galvin's widow and the executrix of his will. In addition, a corporation and seven other individuals are named as defendants.

MRB Group ("MRB") is an engineering firm that served as the town engineer during the relevant time. Anthony Malone is the president of MRB. Plaintiffs allege that MRB and Malone participated in the design and approval of the subdivision, including the alleged diversion of the stream into channels which discharged onto plaintiffs' property.

Defendant Ronald Kreiling, a civil engineer, was allegedly employed by the town in 1985. Plaintiffs contend that he also took part in the design and approval of the subdivision.

Robert Mogray was the town supervisor and Albert Blythe was the town highway supervisor. Apart from being identified, Mogray is not expressly named in the factual allegations of the complaint, although there are a number of references to the town's "agents and employees." Blythe allegedly knew that Edward Galvin had excavated and filled in wetlands and that the area was unfit for building construction.

Virginia Scully–Hill, with her now-deceased husband William Scully, is a former owner of the subdivision. She and her late husband allegedly sold a part of the subdivision to Edward Galvin.

David Allyn is alleged to be a builder who, as an agent for Edward Galvin, entered into an agreement with the Bettises to construct a one-family house on a lot in the subdivision. Plaintiffs contend that Allyn fraudulently represented to them that a house could be built on the site in compliance with applicable laws and regulations and in a good and workmanlike manner.

H. John Coleman was allegedly the prior owner of the lot now owned by the Ferraras. He is alleged to have made fraudulent representations to the Ferraras similar to those attributed to Allyn.

## DISCUSSION

The complaint contains five causes of action. The first alleges that defendants jointly and severally have violated the Clean Water Act. The other four causes of action allege the following pendent state law claims: nuisance; fraud in connection with the sale of the Bettises' lot; violation of Article 24 of the New York Environmental Conservation Law; and fraud in connection with the sale of the Ferraras' lot.

The Clean Water Act is the only claim that has a federal court nexus. All of the other claims relate to alleged claims under state law.

Defendants move to dismiss the Clean Water Act cause of action on a number of grounds and also seek dismissal of the pendent state law claims especially if the Clean Water Act cause of action is dismissed.

Because I believe that there is no basis, on several grounds, for a claim under the Clean Water Act, that cause of action is dismissed. There being no other federal connection to this lawsuit, I decline to retain jurisdiction over the other pendent state law claims under 28 U.S.C. § 1367(a) and, therefore, I dismiss all of the state claims as well.

### 1. Notice Requirement of CWA

■ Defendants contend that the CWA claim must be dismissed because plaintiffs

failed to comply with 33 U.S.C. § 1365(b)(1), which provides that no citizen suit may be commenced unless sixty days' notice of the alleged violation has been given to the Environmental Protection Agency ("EPA"), to the state in which the alleged violation occurs, and to the alleged violator. Failure to comply with this requirement is a fatal jurisdictional defect. *National Environmental Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097–98 (11th Cir.1991); *Proffitt v. Rohm & Haas*, 850 F.2d 1007 (3d Cir.1988).

Pursuant to authority conferred by 33 U.S.C. § 1365(b), the EPA has promulgated regulations prescribing the manner in which notice must be given. 40 C.F.R. § 135.2. If the alleged violator is an individual or corporation, service of notice must be made by certified mail or by personal service upon "the owner or managing agent of the building, plant, installation, vessel, facility or activity alleged to be in violation." 40 C.F.R. § 135.2(a)(1). Copies of the notice must be mailed to the Administrator of the EPA, the Regional Administrator of the EPA for the region in which the alleged violation occurred, and the chief administrator of the relevant state water pollution control agency. If the alleged violator is a corporation, notice must also be mailed to the corporation's registered agent, if any, in the state where the violation allegedly occurred. *Id.*

If the alleged violator is a state or local agency, service of notice must be made by registered mail or personal service upon the head of the agency. Copies must be mailed to the EPA Administrator and Regional Administrator, and to the state water pollution control agency administrator. 40 C.F.R. § 135.2(a)(2).

The regulations also state the required contents of the notice. The notice must "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name,

address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a). The notice must also identify the legal counsel, if any, representing the person giving the notice. 40 C.F.R. § 135.3(c).

■ Plaintiffs contend that they have met all the notice requirements of the Clean Water Act, § 1365(b)(1). I agree with defendants, however, that there has not been compliance with the notice requirements and, therefore, there is no private right of action and the complaint must be dismissed.

Plaintiffs rely on notices of claim against the town filed by the Ferraras on June 27, and by the Bettises on July 10, 1991, relative the filing of claims in state court. Bettis Aff. 7/20/92 Ex. A. They also rely on certain correspondence between Mr. Bettis and various federal and state agencies. *See* Bettis Aff. 5/26/92 Ex. 10–16. In my view, none of these documents comply with the statutory and regulatory notice requirements.

The Ferraras' notice of claim was personally served upon a deputy town clerk of the Town of Ontario. The notice alleged ongoing damage to their property by reason of the diversion of a stream "somewhere between 1968 [sic] and the present ..." It also alleged that the town had been negligent in approving the subdivision within wetlands and in issuing a building permit to the Ferraras knowing that their lot was not suitable for building purposes. The notice contained the Ferraras' address and the name and address of their then-attorney.

The Bettises' notice of claim was served by mail addressed to the town clerk. The affidavit of service gives no indication that the notice was sent by means other than ordinary first-class mail. The notice alleged continuing property damage since "about October 1986" caused by the diversion of the stream. It also contained the same allegations of negligence as the Ferraras' notice, and similarly identified the Bettises, their address, and their attorney.

Mr. Bettis wrote to the Army Corps of Engineers ("the Corps") in January 1991 by certified mail, apparently after speaking to

a Corps official on the telephone. Bettis complained that "the buyers [of lots in the subdivision] were never told about these filled lots over ponds" and that "Even knowing this the town approved and easement [sic] to add even more water to the area," which had caused flooding because "the water has no exit." Bettis Aff. 5/26/92 Ex. 10. He stated, "Mr. Ferrara and I need your help. It time [sic] someone looked into the filling of wetlands, and allowed to be sold as approved lots ..." The letters contained Mr. Bettis's name, address, and telephone number.

Apparently as a result of Mr. Bettis's complaints, a Corps official visited the site in February 1991. In April 1991, the Corps sent a letter to Galvin informing him that an investigation had been made "[b]ased on a citizen's complaint alleging that previous filling of wetlands onsite was causing current residential problems." Bettis Aff. 5/26/92 Ex. 14. The letter did not identify the "citizen." The Corps expressed the opinion that four lots developed by Galvin "did contain wetlands ... prior to the placement of fill in 1985," but that "this wetland fill is authorized" under applicable federal regulations. The letter stated that the Corps "ha[d] no authority to address" allegations concerning residential flooding. The letter concluded with an admonition that "other portions of your property may contain wetlands regulated by the Corps," and that "[w]ork proposed in these areas may also require Department of the Army authorization prior to commencing work and will require you to submit a permit application to the Corps."

Mr. Bettis wrote to the New York State Department of Environmental Conservation ("DEC") in January 1991. *See* Bettis Aff. 5/26/92 Ex. 11. The allegations in this letter are almost identical to those in his letters to the Corps.

Plaintiffs have also submitted a copy of a May 16, 1991 letter which Mr. Bettis sent (apparently by ordinary mail) to the town's local health officer. *See* Bettis Aff. 5/26/92 Ex. 13. In the letter, Bettis complained of stagnant water on his property, but he did not allege any negligence or wrongdoing on anyone's part. Bettis sent a copy of this letter to the state Department of Health, whose district director responded to Bettis the following month, stating that the director had inspected the site and found no health hazards.

In July 1991, Bettis sent a letter by certified mail to the EPA in which he requested an "in house investigation concerning the protection, wet lands Act Inforcement [sic] 1974 ..." Concerning the filled wet lands in the town of Ontario N.Y." Bettis Aff. 5/26/92 Ex. 13. He complained of Galvin's having filled in the wetlands and accused the DEC of having "looked the other way ..."

In a certified letter sent in August 1991 to "Office of the Inspector General N.Y.S. Environmental Conservation Dept.," Mr. Bettis "request[ed] and investigation [sic] of your New York State Agency's, with possible involvement in the Scully Sub–Division land Fraud in the Town of Ontario, N.Y." Bettis Aff. 5/26/92 Ex. 15. Bettis stated that he was "[s]ending along 80 page File, complete with letters, reports, and maps."

Bettis sent an almost identical letter to the Corps that same month. He received a response dated October 29, 1991, which essentially ratified the earlier findings of the Corps' Buffalo District Office "that the area in question was a wetland at one time," and that "[a]lthough the District was not aware of the [fill-in] project at the time of construction, it could be permitted 'after the fact' since the area filled was less than one acre." Bettis Aff. 5/26/92 Ex. 16.

After reviewing these documents, I find that neither individually nor collectively do they meet the CWA notice requirements. As to the individual and corporate defendants, service was not made by certified mail or personal service upon the individual, or the owner or manager of the entity, alleged to be in violation. 40 C.F.R. § 135.-2(a)(1). Most of Mr. Bettis's letters plainly do not meet the requirements, since they were not sent to the alleged violators, but to government agencies which Bettis want-

ed to investigate his problem. 40 C.F.R. § 135.2(a)(1).

With respect to the town, service of notice should have been by registered mail or personal service upon the "head of [the] agency" alleged to be responsible for the violation. 40 C.F.R. § 135.2(a)(2). While it is not immediately apparent who that would be in this case, it was certainly not the deputy town clerk upon whom the Ferraras' notice of claim was personally served. The Bettises' notice of claim was also deficient, since it was addressed to the town clerk, and it was not sent by registered mail.

Mr. Bettis's letter to the town's local health officer also did not meet the service requirements under the Act. It was apparently sent by regular mail, and there is no evidence or allegation that the town's health department was responsible for the alleged violation.

Moreover, most of the defendants in this case were never named in the notices or letters. With the exception of the town, and possibly Galvin, the notices therefore failed to identify "the person or persons responsible for the alleged violation ..." *Id.* The notices also did not all meet the requirement that they contain "the full name, address, and telephone number of the person giving notice." *Id.*

Obviously, not all of these defects are equally serious. In view of Mr. Bettis's *pro se* status when he wrote to the government agencies seeking help, some of the more technical departures from the Act's requirements could perhaps be forgiven if the notice requirements as a whole had been substantially complied with. The problem is that they were not. Defendants were simply not apprised of any allegation that they had violated CWA. Most of the defendants, in fact, were not apprised of anything at all, since they never received a notice of any kind.

The notices and letters are deficient in content. Although they generally identify the activities complained of, none of the documents "include[d] sufficient information to permit the recipient to identify the *specific* standard, limitation, or order alleged to have been violated ..." 40 C.F.R.

§ 135.3(a) (emphasis added). The problem is not merely that the notices did not cite the specific statutes in question—which is not actually required by the regulation—but that they gave no indication that any CWA violation was being alleged. The statements in the notices of claim and in Mr. Bettis's letters simply allege negligence or nuisance claims. Even if service had been proper, and even if the proper parties had been served, the notices do not indicate that any CWA violation occurred. Essentially, plaintiffs complained that they had been defrauded into purchasing land that was not suitable for their purposes. The "notices" did not advise that the defendants were introducing pollutants into waters covered by the Act.

These deficiencies cannot be overlooked; the Act's "notice requirement is not a mere technical wrinkle of statutory drafting or formality to be waived by the federal courts." *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir.1985).

I conclude, then, that the notice requirements of CWA have not been met. Under these circumstances, "the District Court must dismiss the action as barred by the terms of the statute." *Hallstrom v. Tillamook County,* 493 U.S. 20, 33, 110 S.Ct. 304, 312, 107 L.Ed.2d 237 (1989); *see also Greene v. Reilly,* 956 F.2d 593, 594 (6th Cir.1992) (plaintiff who reported alleged violations to various EPA officials but who did not notify EPA of plans to sue did not satisfy requirements for CWA suit against EPA Administrator); *Save the Yaak Committee v. Block,* 840 F.2d 714, 721 (9th Cir.1988) (letters to supervisor of national forest and to regional director of U.S. Fish and Wildlife Service, with copies to various state and federal legislators, did not satisfy notice requirement of Endangered Species Act because they did not give notice of violation or of intention to sue, and because they were not sent to correct person, *i.e.* the Secretary of the Interior or Secretary of Commerce).

*2. Ongoing Clean Water Act Violations*

■ Defendants also contend that the complaint fails to state a CWA claim because it is based solely on past violations, whereas a private right of action exists

under 33 U.S.C. § 1365 only for *ongoing* violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *see also Atlantic States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir.1991). Plaintiffs can show ongoing violations either by proving that violations occurred after the filing of the complaint, or by adducing evidence of a continuing likelihood of recurrence of intermittent or sporadic violations. *Chesapeake Bay Found. v. Gwaltney of Smithfield*, 890 F.2d 690, 693 (4th Cir.1989).

The burden of proof with respect to continuing violations may shift at various stages of the case. A good-faith allegation that the defendant is in violation of the Act suffices to confer subject-matter jurisdiction on the district court. *Gwaltney*, 484 U.S. at 64, 108 S.Ct. at 378. The defendant may subsequently challenge that allegation on a motion for summary judgment, however, in which case the burden is on the defendant to show that the undisputed facts establish the absence of ongoing violations. *Id.* at 65, 108 S.Ct. at 378. If the defendant fails to so move, or to carry its burden under Rule 56, then the plaintiff will have the burden of proving an ongoing violation at trial. *Id.* at 65–66, 108 S.Ct. at 378.

In the case at bar, I find that defendants have met their burden of showing that the undisputed facts demonstrate the absence of any activity which could constitute an ongoing violation of CWA. The acts on which the complaint is based either occurred wholly in the past, or simply could never have constituted violations of the Act in the first place.

The actions alleged by plaintiffs may be broken down into several categories. One is Galvin's filling-in of parts of the subdivision with the town's approval. The record shows, however, that that activity ceased years before the complaint in this case was filed. The complaint itself states as much. For example, at paragraph 28, plaintiffs allege that Galvin was allowed to excavate

and fill in wetlands "between 1985 through 1987 ..." At paragraph 44, plaintiffs state that the town negligently permitted Galvin "to fill in or excavate within wetlands from 1985 through 1987."

The complaint alleges that the town granted Galvin a further permit to excavate and fill in the area in July 1988, but it also states that that permit expired in July 1991, and it does not allege that Galvin (who is now deceased) actually did fill in any areas during that time. The affidavits submitted by plaintiffs in opposition to defendants' motions also do not indicate that any further excavation occurred after 1987, nor do they give any basis upon which to believe that such activity is likely to recur in the future.[2]

The other acts alleged by plaintiffs relate to the diversion of a natural stream by the town, and to alleged fraud or deception by defendants in connection with plaintiffs' purchases of their lots. These acts, however, regardless of when they occurred, do not support a CWA claim.

The Clean Waters Act makes unlawful "the discharge of any pollutant by any person ..." 33 U.S.C. § 1311. "Pollutants" include solid waste and various other specified types of matter "discharged into water." 33 U.S.C. § 1362(6). Water itself, however, is not a pollutant. *Id.* Simply moving water from one place to another, therefore, does not constitute the discharge of a pollutant under the Act. *See, e.g., Missouri ex rel. Ashcroft v. Department of the Army*, 672 F.2d 1297 (8th Cir.1982) (operation of dam does not result in discharge of pollutant).

The complaint and the evidence in the record show at most that the town diverted the course of an existing stream. Although plaintiffs allege that the resulting flooding has damaged their property, there is no indication that any pollutants were discharged either into the stream or from the stream into another body of water. These allegations, then, do not support a CWA claim. Certainly the allegations relating to fraud in connection with

---

**2.** At oral argument, plaintiffs' counsel stated that Galvin had continued filling in the area until 1990. Even if I were to accept counsel's

allegation, however, it would not change my finding that plaintiffs have not alleged a continuing violation or threat of future violations.

the sale of plaintiffs' lots do not state a CWA violation. Plaintiffs' remedy, if any, is not grounded in the Clean Water Act in federal court. Those alleged actions suggest state claims, not federal ones.[3]

### 3. Pendent Claims

The only remaining issue, then, is whether to retain jurisdiction over plaintiffs' pendent state law claims. I decline to do so. Under 28 U.S.C. § 1367(a), a district court has discretion to decline to exercise jurisdiction over a pendent claim if "the district court has dismissed all claims over which it has original jurisdiction ..." In practice, state law claims are ordinarily dismissed when all federal claims have been dismissed, particularly when the case is in its early stages. *See Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990).

### CONCLUSION

Defendants' motions for summary judgment are granted, and the complaint is dismissed in its entirety.

IT IS SO ORDERED.

---

3. Having held that plaintiffs' CWA claim is fatally flawed in two respects, I find it unnecessary to reach defendants' arguments that the CWA claim is time-barred and that plaintiffs have not sufficiently alleged that the affected area is a "navigable water" as that term is used in the Act; *see* 33 U.S.C. § 1251; 40 C.F.R. § 122.2.