**UNITED STATES of America Plaintiff,**

v.

**CUMBERLAND FARMS, INC., Defendant.**

**Civ. A. No. 85–0846–Y.**

United States District Court, D. Massachusetts.

Sept. 25, 1986.

## FINAL JUDGMENT AND ORDER

YOUNG, District Judge.

On the basis of the findings of fact and rulings of law made in both the liability phase and penalty/restoration phase of the trial of this case, the following order is entered:

A. As to remedy, it is hereby ordered that:

1. The defendant is permanently enjoined from engaging in any filling, draining, dredging, or clearing of the land in the subject property below the line designated on the attached diagram marked "A" except in furtherance of the ordered restoration of this property specified in Para-

graphs 2 and 3.[1] This permanent injunction may be modified by the Court upon application of any party, in the event the defendant applies for and obtains an after-the-fact permit pursuant to § 404 of the Clean Water Act or the law or regulations relating to it are modified or changed.

2. The defendant shall perform the restoration plan referred to in Paragraph 3 on that portion of the Great Cedar Swamp to the south of the line designated on Diagram "A." This line also may be altered by agreement of the parties and with approval of this Court should conditions encountered during or after restoration or normal farming practice require such modification.

3. In restoring the area identified above, the defendant shall comply with and perform the restoration plan submitted by Dr. Gary R. Sanford, marked for identification as Exhibit RR, in the manner set forth below:

a. In order to produce the hydrological regime necessary for this restoration, the defendant shall back-fill: 1) the perimeter ditch on the western edge of the property running north and south roughly parallel to Thompson Street; 2) the ditch connecting the Bartlett and Raven Brooks at the southern end of the property; and 3) the ditch on the western side of the property, running in an east to west direction, and located slightly south of the farm known as the "Old Johnson Farm."

b. The defendant shall construct check dams at one thousand foot intervals along the portions of Bartlett and Raven Brooks located to the south of the line designated on Diagram "A", except that no check dam shall be constructed closer than 1000 feet from the southerly boundary of the property (i.e., the location of the cranberry bogs). Each check dam shall be made of earth taken from the dike roads running along Bartlett and Raven Brooks and covered with a minimum of ½ foot of one inch crushed stone. The level of the top of each check dam will be approximately equivalent to the level of the top of the stream bank. At the location where the dike roads are excavated, the resulting gap in the dike road will be no narrower than five feet and the floor of said gap will be at the same level as the immediately surrounding terrain. Said gaps shall be located immediately upstream of the check dam.

c. The defendant shall construct a continuous earthen dam or dike along the line designated as Diagram "A." The dam or dike shall be constructed to a top level measuring no less than 30 feet NGVD (National Geodetic Vertical Datum) and shall be a minimum top thickness of 10 feet with side slopes no steeper than 2 foot horizontal to 1 foot vertical. The earth for this dam or dike may be taken from the field areas immediately bordering the southerly side of the red line designated on Exhibit 64 admitted into evidence (i.e., the 1977 conversion line).

d. The defendant shall install two water control structures similar in design to that which was located on the property in Bartlett Brook prior to 1985. These water con-

---

1. The line on Diagram "A" is identified by using as a point of reference the common transect point used in the four topographical surveys introduced into evidence as Exhibits 60, 61, 62, 63 and marked on Diagram "A" by a red X. The line is identified as follows:

830 feet north from common transect point along Transect Line 1 (Exhibit 63) the line on Diagram A merges with Transect Line 1 (hereinafter termed the "merger point"). The line on Diagram "A" from the merger point toward Thompson Street extends 910 feet SSE of the merger point, turns at a ninety degree angle across Bartlett Brook (the site of the 15 foot wide water control structure and emergency spillway), 800 feet in a SSW direction

to the edge of the property. The line on Diagram "A" from the merger point toward Fuller Street follows Transect Line # 1 in a North East direction, extending approximately 4330 feet, then turning S.E. on a line perpendicular (90 degrees) to Transect Line # 1 extending 2000 feet, then turning due south 3580 feet, then turning 90 degrees in an easterly direction 830 feet, then turning 90 degrees north for 830 feet, then turning 90 degrees east approximately 1250 feet (this section incorporates the water control structure across Raven Brook), and then the line proceeds in a general SE direction toward Fuller Street to the eastern edge of the property.

trol structures are to be located in Raven and Bartlett Brooks at the approximate locations designated on Diagram "A" with a double line. The water control structure on Bartlett Brook shall be located approximately 7500 feet south (i.e., upstream) of the intersection of Bartlett Brook and River Street. The water control structure on Raven Brook shall be located approximately 3080 feet south (i.e., upstream) of the intersection of Wood Street and Raven Brook. These water control structures will be designed to permit a fluctuation in water level between the levels of 23 to 27 feet NGVD. The water control structures will be surrounded by sufficient earth and stone to permit them to function properly and effectively. The top of these water control structures will be no higher than 28 feet NGVD and incorporate a fifteen foot wide emergency spillway, armored against erosion, for any overflow of water. See Diagram "B." On the southerly side of said structures, the defendant shall place a water gauge which clearly designates water levels from 23 to 29 feet NGVD.

e. The defendant shall restore the wetland terrain in the areas south of the line designated on Diagram "A" which have been converted to fields by bulldozing those fields in a manner to create a series of interspersed hummocks and hollows as designated in the restoration plan, Exhibit RR. The top of each hummock shall be approximately one foot above the present level of the neighboring terrain. The defendant shall attempt to prevent the interconnection of the substantial majority of the hollows.

f. The defendant shall "strip mulch" wetland vegetation onto the former cornfield area described immediately above in the manner designated in the restoration plan, Exhibit RR. In order to perform this strip mulching, the defendant, with the assistance and supervision of the on-scene coordinator (see Paragraph 4, *infra*), shall

remove strips of existing wetland vegetation measuring approximately 6 inches to 1 foot thick, 10 feet wide, and 100 feet long from the existing wetland on the property. These strips shall be removed from locations scattered throughout the existing wetland and the locations for removal shall be selected in order to minimize adverse impacts to the existing wetland. The defendant shall remove a sufficient number of strips in order to place these strips at a rate of one per acre in the re-converted area described in the immediately preceeding sub-paragraph.

4. Dr. Sanford, or another professional wetlands botanist or biologist mutually agreed upon by the parties, shall be designated the on-scene coordinator. The duties of the on-scene coordinator shall include conducting or directing any tasks undertaken pursuant to this order regarding the implementation of the restoration plan specified in Paragraphs 2–3. In addition, the on-scene coordinator shall monitor the area south of the line designated on Diagram "A" for three years after completion of the restoration plan and prepare a report on the status of the wetland restoration at the end of each of the three years. These reports shall be provided to the parties and filed with the Court. If he deems it necessary, the on-scene coordinator shall hire a qualified engineer to assist him in directing the tasks ordered pursuant to this Order. The defendant shall be responsible for bearing the costs of all aspects of the restoration plan including the fees and expenses of the on-scene coordinator and engineer, and on-going monitoring and maintenance.

5. Nothing in this remedy is intended to preclude the defendant from completing its harvest of any crops now growing upon the property. The restoration work should be completed, however, by June 30, 1987.[2]

6. Army Corps of Engineers will be allowed access to the subject property during normal business hours, upon 24–hour prior

---

**2.** The Court had originally intended that the restoration be completed by December 31, 1986, and a final order to that effect was signed on August 1, 1986. Due to a mix-up, however, this order was never forwarded to the parties. The season for outdoor restoration being far advanced by the time the error was discovered, the Court concludes that it is in the interests of justice to extend the time for performance of the restoration work for a period of six months.

notification to defendant's attorney. Each step of the above restoration plan will be completed to the approval of Army Corps of Engineers personnel, and they shall certify to this Court their approval. If adverse deviation from this plan is identified by Army Corps of Engineers personnel, defendant shall cease activity immediately and take corrective action as outlined by Army Corps of Engineers personnel. If defendant fails to take this corrective action or fails to in any way complete this plan within the time provision, pursuant to Rule 70, F.R.Civ.P., the Army Corps of Engineers is hereby directed to complete the work of this restoration plan and defendant shall reimburse the Army Corps of Engineers for the work which they performed in the manner prescribed by Paragraph 8 of this Order.

7. Within 30 days from the date of this Order, the defendant will post with the Clerk of the Court a performance bond in cash or from a licensed surety company in the amount of $150,000.00.

8. In the event the defendant does not complete the restoration in a timely manner, as ordered by this Court, or in accordance with the above plan, said performance bonds shall be forfeited to the Government for the express purpose of funding the completion of the Court-ordered restoration by the Government or its contractors. Upon the completion of the restoration work, all unexpended portions of the performance bond will be returned to defendant. Should the restoration cost more than $150,000.00, the defendant shall pay the Army Corps of Engineers such additional sum within 30 days of demand.

9. The defendant shall perform periodic inspections, at intervals of at least once every two months, to insure that the water control structures designated in Paragraph 3(d) are operating properly and maintaining a water level, at each control structure, of between 25 and 26 feet NGVD, or such other water level as the District Engineer of the Corps may designate. The defendant shall be responsible for performing and paying for the on-going maintenance of the water control structures. The defendant shall immediately notify the District Engineer of any difficulties encountered in performing its responsibilities pursuant to this paragraph.

10. This Order shall be binding on the defendant, its employers, agents, successors and assignees, notwithstanding the fact that the defendant, its successors or assignees shall be entitled to apply for a permit under § 404 of the Clean Water Act.

B. As to penalty, it is hereby ordered that the defendant pay the United States of America the sum of $540,000.00 as a civil penalty for its knowing, repeated and continuing violations of the Clean Water Act. The defendant shall pay $150,000.00 of this sum to the United States within 30 days of the entry of this order. The payment of the remaining $390,000.00 is stayed until June 30, 1987, and that sum will be remitted to the defendant if the defendant satisfactorily completes the restoration set forth in Paragraphs 1–5 above by June 30, 1987.

Should the defendant appeal this Order and Judgment, the civil penalty and injunction set forth above shall be stayed in the event that the defendant posts a supersedeas bond in the amount of $400,000.00.

SO ORDERED.