**UNITED STATES of America, Plaintiff,**

v.

**SMITHFIELD FOODS, INC., Smithfield Packing Company, Inc., and Gwaltney of Smithfield, Ltd., Defendants.**

**Action No. 2:96cv1204.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 26, 1997.

Susan Lynn Watt, Asst. U.S. Atty., Norfolk, VA, Lois J. Schiffer, U.S. Dept. of Justice, Washington, DC, Sarah D. Himmelhoch, Michael D. Goodstein, Richard Hong, U.S. Dept. of Justice/Environmental Enforcement Section, Washington, DC, Yvette C. Roundtree, Asst. Regional Counsel, U.S. E.P.A., Nadine Steinberg, U.S. E.P.A., Washington, DC, for Plaintiff.

Anthony F. Troy, John K. Burke, Jr., James S. Crockett, Jr., James Edward Ryan, Jr., Mays & Valentine, Richmond, VA, Patrick M. Raher, Sten A. Jensen, Hogan & Hartson, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

On August 8, 1997, this court directed the clerk to enter judgment against defendants for $12,600,000 in civil penalties. The court ordered the plaintiff to submit "within thirty (30) days, a proposal for the allocation of this penalty, with a specific focus on the feasibility of directing all, or part of, the penalty toward the restoration of the Chesapeake Bay and its tributaries, namely the James and the Pagan Rivers." *United States v. Smithfield Foods, Inc.*, 972 F.Supp. 338 (E.D.Va.1997). The United States filed its response, maintaining that Smithfield must pay the full $12,600,000 into the United States Treasury. According to the government, the language of the Clean Water Act, case law, congressional intent, and public policy all dictate the conclusion that penalties under the Act must be paid to the Treasury. Addressing each of these assertions, the court concludes that it cannot direct the penalty to any specific activity.

■ First, the Clean Water Act, itself, does not specify where the civil penalties are to be paid. However, the Miscellaneous Receipts Act requires that a "person having custody or possession of public money" must deposit the money with the Treasury within a certain time limit. 31 U.S.C. § 3302(c)(1). This court's understanding of a penalty, which is imposed pursuant to a federal statute, in a suit brought by the federal government, is that it constitutes "public money." As such, it must be deposited with the Treasury, in accordance with the Miscellaneous Receipts Act, unless otherwise specified by Congress. *Id.*

In regard to congressional intent, it is clear, at least in the context of citizen suits, that Congress intended penalties to be paid into the Treasury. "[A]ny penalties imposed [in citizen suits] would be deposited as miscellaneous receipts and not recovered by the complainant." S. Rep. 92–414, at 133 (1972), reprinted in 1972 U.S.C.C.A.N. 3668, 3745. Courts, in suits brought by citizens, have interpreted that statement, in conjunction with the Miscellaneous Receipts Act, to mean that penalties paid under the Clean Water Act must be paid into the United States Treasury.[1]

---

1. *See, e.g., Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 53, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14 n. 25, 101 S.Ct. 2615, 2623 n. 25, 69 L.Ed.2d 435 (1981); *Sierra Club, Inc. v. Elec.*

However, this court could find only one case in which a court closely examined the issue in the context of suits by the government, as opposed to citizen suits. *United States v. Roll Coater, Inc.*, 21 Envtl. L. Rep. 21073, 21077–78, 1991 WL 165771 (S.D.Ind. 1991). The court in *Roll Coater* held that once an assessment is labeled as a civil penalty, the money must be paid to the Treasury. *Id.* at 21077–78. There are some cases in which courts granted defendants alternative options rather than automatically directing entire penalties to the United States Treasury.[2] None of these cases, however, contained any discussion regarding whether such allocations are in fact legally permissible. The courts did not examine the legislative history of the Clean Water Act, the Miscellaneous Receipts Act, or any of the cases holding that penalties must be paid to the United States Treasury.[3]

Recently proposed bills shed light on Congress's understanding of all distributions under the Clean Water Act. In 1994, a bill amending the Clean Water Act, to allow for "beneficial use" of penalties, was introduced in the Senate. S.2093, 103d Cong. (1994). The bill did not become law, but language in the accompanying report is enlightening:

> *Under current law, penalties assessed by ... a Federal court must be deposited in the Federal Treasury.* Unlike some State penalties, Federal penalties may not be used to support a local project that enhances water quality, or that provides re-

lated environmental benefits. However, such "beneficial use" of penalties may significantly promote the objectives of the Act by not only deterring future violations, but also by enhancing water quality of the waters affected by the violation. Therefore, the bill amends sections 309(c), 309(d), and 505 to authorize the beneficial use of penalties.

S.Rep. No. 103–257, at 182 (1994) (emphasis added).

Currently there are identical bills pending in both the House of Representatives and the Senate which would allow federal courts to direct money to beneficial projects. The bills would amend section 309(d) of the Clean Water Act to state that "[t]he court may, in the court's discretion, order that a civil penalty be used for carrying out mitigation projects which are consistent with the purposes of this Act and which enhance the public health or environment." H.R. 1453, 105th Cong. § 5 (1997); S. 645, 105th Cong. § 5 (1997). In the event that these bills become law before the conclusion of this case, this court may reconsider the direction of the penalty, if legally appropriate at that time.[4]

■ Finally, as a matter of public policy, simply depositing civil penalties into the vast reaches of the United States Treasury does not seem to be the most effective way of combating environmental problems caused by a specific polluter. However, it is not the court's role to legislate, but rather to enforce

Controls Design, Inc., 909 F.2d 1350, 1354–55 (9th Cir.1990); *Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 81 (3d Cir.1990); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1131 n. 5 (11th Cir.1990); *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1113 (4th Cir.1988), *cert. denied*, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989); *Atlantic States Legal Found., Inc. v. Universal Tool Stamping Co., Inc.*, 786 F.Supp. 743, 754 (N.D.Ind.1992); *Friends of the Earth v. Archer Daniels Midland Co.*, 780 F.Supp. 95, 101 (N.D.N.Y.1992); *Public Interest Research Group of N.J., Inc. v. Struthers–Dunn, Inc.*, 1988 WL 147639 at *2 (D.N.J. Aug.16, 1988).

**2.** *See, e.g., United States v. Van Leuzen*, 816 F.Supp. 1171 (S.D.Tex.1993); *United States v. City of San Diego*, 21 Envtl. L. Rep. 21223, 21223–24, 1991 WL 163747 (S.D.Cal.1991); *United States v. Key West Towers, Inc.*, 720

F.Supp. 963 (S.D.Fla.1989); *United States v. Larkins*, 657 F.Supp. 76, 87 (W.D.Ky.1987); *United States v. Cumberland Farms, Inc.*, 644 F.Supp. 319 (D.Mass.1986).

**3.** *See supra* at note 1, for cases holding that penalties must be paid to the United States Treasury.

**4.** This statement assumes an appeal by Smithfield and a remand from the Fourth Circuit to this court to reconsider directing the penalty toward the restoration of the damaged waters involved herein. In particular, this court has received and reviewed numerous well thought out proposals, each of which suggest beneficial uses for the penalty assessed against Smithfield. In light of these proposals, it would not be difficult for this court to fashion a plan for distribution that would help to reverse some of the environmental damage caused by Smithfield.

the law Congress has passed. And under current law, it appears that once a penalty has been assessed by the court, the penalty must be paid into the Treasury.[5]

In conclusion, the court regretfully agrees with the government that it legally cannot, absent a change in the statute, or further direction from the Fourth Circuit Court of Appeals, direct money to local environmental projects. Accordingly, the court **ORDERS** that the $12,600,000 penalty imposed against Smithfield Foods on August 8, 1997, be paid into the United States Treasury.

It is so **ORDERED**.

---

5. Of course, monies paid in *settlement* of suits may be used to fund local environmental projects. Parties may compromise claims as they see fit. *See Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 81 n. 32 (3d Cir.1990); *see also Sierra Club, Inc. v. Electronic Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir.1990) (holding that while a court cannot order a defendant to make payments to an organization other than the U.S. Treasury, the prohibition does not extend to settlement agreements whereby liability has not been determined by the court). In addition, courts may issue injunctive relief under the Clean Water Act directing defendants to pay monies to local entities. 33 U.S.C. § 1319; *see, e.g., Hawaii's Thous. Friends v. Honolulu*, 821 F.Supp. 1368, 1397 (D.Haw.1993). In this case, the government did not seek injunctive relief and the full $12,600,000 has been assessed as a penalty.