**Jean TAMASKA and Joe Tamaska,**
**Plaintiffs–Appellants–Cross–**
**Appellees,**

**v.**

**CITY OF BLUFF CITY, TENNESSEE**
**Defendant–Appellee–Cross–**
**Appellant.**

Nos. 00–5179, 00–5244.

United States Court of Appeals,
Sixth Circuit.

Jan. 4, 2002.

Before BOGGS and RYAN, Circuit Judges; and WILLIAMS,* District Judge.

WILLIAMS, Senior District Judge.

The parties in these cases have filed cross-appeals of the district court's various rulings regarding the awarding of and the amount of civil penalties and attorneys' fees under the Clean Water Act. For the reasons set forth below, we affirm the district court.

---

## I. BACKGROUND

This action was originally brought, in part, as a citizens' suit pursuant to Section 505 of the Clean Water Act, ("the Act"), 33 U.S.C. § 1365. In this suit, the Appellants/Cross–Appellees, Jean and Joe Tamaska, ("the Tamaskas"), alleged that the Appellee/Cross–Appellant, the City of Bluff City, Tennessee, ("Bluff City"), violated the Act by permitting untreated or partially treated sewage and wastewater to discharge over the Tamaskas' property and to flow into Boone Lake. Prior to trial, the parties reached an agreement on a Consent Judgment, which was approved and entered by the district court on March 17, 1998. Under the Consent Judgment, Bluff City agreed to cease operating its wastewater treatment facility and to connect its wastewater collection system to the City of Bristol, Tennessee, sewage trunk line. The Consent Judgment also provides:

> If defendant has not connected its wastewater collection system to the City of Bristol, Tennessee, sewage trunk line by April 15, 1998, it shall show cause why civil penalties pursuant to 33 U.S.C. § 1319(d) for its Clean Water Act violations shall not be imposed.

The district court retained jurisdiction under the Consent Judgment "for the enforcement of compliance therewith and the punishment of violations thereof."

On April 14, 1998, Bluff City filed a motion to amend or alter the Consent Judgment and requested an extension of time to connect its wastewater collection system to the Bristol trunk line. On April 16, 1998, Bluff City again allowed raw and partially treated sewage and sludge to flow onto the Tamaskas' property. On April 17, 1998, the Tamaskas filed a motion for a

---

* The Hon. Glen M. Williams. Senior United States District Judge for the Western District of Virginia, sitting by designation.

show cause hearing requesting Bluff City to show cause why civil penalties should not be imposed under the Act. The Tamaskas also filed a motion for damages. Bluff City continued to operate its wastewater treatment facility until June 18, 1998, when it closed the facility and connected to the Bristol trunk line.

On April 16, 1999, the district court[1] dismissed the Tamaskas' motion for damages, finding that it lacked subject matter jurisdiction over their state law nuisance claim. The court further found that the Tamaskas were not entitled to damages from Bluff City for violation of the Consent Judgment. By Memorandum and Order filed May 5, 1999, the court granted Bluff City a 14–day extension of the Consent Judgment's April 15, 1998, deadline to connect to the Bristol trunk line, based on unanticipated delays. Despite this extension, the court found that Bluff City went 49 days beyond the extended deadline before connecting to the Bristol trunk line as required by the Consent Judgment.

On September 21, 1999, the district court entered a Judgment and Memorandum Opinion assessing a civil penalty of $100.00 per day against Bluff City for each of the 49 days it failed to comply with the terms of the Consent Judgment, for a total civil penalty of $4,900.00, to be paid to the United States Treasury. On September 26, 1999, the Tamaskas filed a motion for an award of attorneys' fees, seeking fees in the amount of $19,241.00. By Memorandum and Order dated February 1, 2000, the district court awarded the Tamaskas attorneys' fees totaling $5,000.00.

The Tamaskas and Bluff City have filed cross appeals. Bluff City has appealed the district court's assessment of a civil penalty against it. The Tamaskas also have appealed the district court's ruling on this issue. The Tamaskas argue that the court erred in the amount assessed against Bluff City and in ordering that the penalty be paid to the United States Treasury rather than to them. Bluff City further appeals the district court's award of attorneys' fees to the Tamaskas. The Tamaskas also have appealed on this issue, arguing that the court erred in the amount of attorneys' fees awarded.

## II. ANALYSIS

In 1972, Congress enacted the Clean Water Act, 33 U.S.C. § 1251 *et seq.* Pursuant to Section 402 of the Act, 33 U.S.C. § 1342 provides for the issuance of National Pollutant Discharge Elimination System ("NPDES") permits. NPDES permits impose limitations on the discharge of pollutants and establish related monitoring and reporting requirements in order to improve the cleanliness and safety of our nation's waters. *See Friends of the Earth, Inc. v. Laidlaw Environmental Serv's. (TOC), Inc.,* 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The Act prohibits the discharge of any pollutant, unless the discharge is made in accordance with an NPDES permit issued to the entity. *See* 33 U.S.C. § 1311(a). An entity holding a NPDES permit is subject to both federal and state enforcement actions, as well as suits brought by any "citizen" to enforce any discharge limitations contained in a permit. *See* 33 U.S.C. § 1365(a). The Act defines a "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

In such citizens' suits, the Act limits the remedies available to injunctive relief and the assessment of civil penalties. *See* 33 U.S.C. § 1319(d); *see also, Friends of the*

---

**1.** The relevant decisions in this case were rendered by a magistrate judge to whom this case was transferred based on the consent of the parties.

*Earth,* 528 U.S. at 175, 120 S.Ct. 693. In determining the amount of civil penalty to assess under the Act, a district court must take into account "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d). Also, courts have held that any civil penalties imposed under the Act are payable to the United States Treasury. *See, e.g., Friends of the Earth,* 528 U.S. at 175, 120 S.Ct. 693; *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 53, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.* 453 U.S. 1, 14 n. 25, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Sierra Club. Inc. v. Elec. Controls Design, Inc.,* 909 F.2d 1350, 1354–55 (9th Cir.1990); *Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.,* 913 F.2d 64, 81 (3d Cir.1990); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1131 n. 5 (11th Cir.1990); *Sierra Club v. Simkins Indus., Inc.,* 847 F.2d 1109, 1113 (4th Cir.1988), *cert. denied,* 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989); *United States v. Smithfield Foods, Inc.,* 982 F.Supp. 373, 374 (E.D.Va.1997); *Atlantic States Legal Found., Inc. v. Universal Tool & Stamping Co., Inc.,* 786 F.Supp. 743, 754 (N.D.Ind.1992); *Friends of the Earth v. Archer Daniels Midland Co.,* 780 F.Supp. 95, 101 (N.D.N.Y.1992); *Public Interest Research Group of N.J., Inc. v. Struthers–Dunn, Inc.,* 1988 WL 147639 at *2 (D.N.J. Aug. 16, 1988).

■ Furthermore, the Supreme Court has interpreted the Act as not permitting citizens' suits for violations that were wholly in past. *See Gwaltney of Smithfield, Ltd.,* 484 U.S. at 57, 108 S.Ct. 376. The Court held that, based on the language of § 1365(a), citizens must prove "a state of either continuous or intermittent violation" to prevail. *Gwaltney of Smithfield, Ltd.,* 484 U.S. at 57, 108 S.Ct. 376. A citizen may establish that a violation is ongoing either "1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield. Ltd.,* 844 F.2d 170, 171–72 (4th Cir.1988) *cited in Allen County Citizens for the Environment, Inc. v. BP Oil Co.,* 762 F.Supp. 733, 739 (N.D.Ohio 1991), *aff'd.* 966 F.2d 1451 (6th Cir.1992). While this circuit has not explicitly addressed the issue, it appears that a number of courts have held that compliance with the Act's requirements after the filing of a suit does not moot an otherwise valid claim for civil penalties. *See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.,* 138 F.3d 351, 356 (8th Cir.1998); *Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 820 (7th Cir.1997); *Natural Resources Defense Council, Inc. v. Texaco Refining & Marketing. Inc.,* 2 F.3d 493, 502 (3rd Cir.1993); *Atlantic States Legal Found., Inc. v. Pan American Tanning Corp.,* 993 F.2d 1017, 1020 (2nd Cir.1993); *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1134–36 (11th Cir.1990); *Georgia v. City of East Ridge, Tenn.,* 949 F.Supp. 1571, 1579 (N.D.Ga.1996); *Public Interest Research Group of N. J., Inc. v. N.J. Expressway Auth.,* 822 F.Supp. 174, 175 (D.N.J.1992).

■ In this case, Bluff City argues that the imposition of a civil penalty by the district court in September 1999 was improper because, by that time, it had ceased

operating its wastewater treatment facility and had connected to the Bristol trunk line, eliminating any further chance that it would continue violating the Act. In *Friends of the Earth, Inc.*, 528 U.S. at 170, 120 S.Ct. 693, the Supreme Court recognized that a claim under the Act might become moot if " 'subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " 528 U.S. at 189, 120 S.Ct. 693 (citations omitted); *see also Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 529 (6th Cir.2000) (Norris, J., dissenting). The Supreme Court, however, also recognized that " 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' " *Friends of the Earth, Inc.*, 528 U.S. at 189, 120 S.Ct. 693 (citations omitted). Furthermore, we believe that a defendant's voluntary cessation of a challenged practice after the filing of suit, but before entry of judgment, should not deprive the court of the ability to impose civil penalties for violations of the Act. We agree with the Third Circuit's reasoning that to hold otherwise would encourage polluters to delay litigation as long as possible, knowing that they could escape all liability for even post-complaint violations by simply coming into compliance with the Act before the suit came to trial. *See Natural Resources Defense Council, Inc.*, 2 F.3d at 503. Therefore, we reject Bluff City's argument that the Tamaskas' claim for civil penalties was moot.

■ Nor did the district court commit any error in ordering that the penalty imposed be paid to the United States Treasury. No doubt based on the cases cited above, the Tamaskas concede that a true civil penalty imposed under the Act must be paid into the United States Treasury. *See United States v. Smithfield Foods, Inc.*, 982 F.Supp. at 374. Nonetheless, the Tamaskas argue that what the district court imposed in this case was a contempt fine, which should have been paid to them. We do not find this argument persuasive.

The district court's decision clearly states that it was imposing civil penalties under the Act pursuant to 33 U.S.C. § 1319(d),[2] and not penalties for contempt of court. In fact, the court specifically declined to assess any contempt penalty against Bluff City based on its reasoning that to do so would allow these individual plaintiffs to receive monetary damages, a remedy not authorized by the Act. The court also noted that the Tamaskas were not without recourse in that they were free to pursue a state court claim for damages.

■ We also find that the district court did not abuse its discretion in the amount of civil penalty assessed. The district court decision reveals that it fully considered each of the factors listed in § 1319(d) in reaching its conclusion as to the proper amount of civil penalties to award. Based on its thoughtful and well-reasoned balancing of these factors, the district court determined that a civil penalty of $100 per day should be imposed against Bluff City for each of the 49 days that it failed to comply with the extended deadline. We cannot find that the district court abused the discretion given to it in assessing this amount.

■ With regard to the issue of attorneys' fees, 33 U.S.C. § 1365(d) provides that reasonable attorneys' fees may be awarded to any "prevailing or substantially

---

**2.** Although the Memorandum Opinion refers to 23 U.S.C. § 1319(d), the proper citation is 33 U.S.C. § 1319(d).

prevailing party." In the context of § 1365(d), a plaintiff is said to have "prevailed" if he has succeeded on any significant issue in the litigation, which achieves some of the benefits sought in bringing suit. *See Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3rd Cir.1992); *Gingras v. Lloyd*, 740 F.2d 210, 212 (2nd Cir.1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In this case, the Tamaskas filed suit under the Act, in part, to put an end to Bluff City's violation of the Act, as well as to seek imposition of appropriate civil penalties based on these violations.

Bluff City argues that the Tamaskas should not have been awarded attorneys' fees because they were not a prevailing party at this stage of the proceedings, but instead received all they sought to accomplish through the Consent Judgment entered in March 1998. We disagree. While the parties entered into a Consent Judgment, it is undisputed that Bluff City did not comply with the terms of this judgment. In particular, the Consent Judgment required that Bluff City discontinue the use of its wastewater treatment facility and connect to the Bristol trunk line by no later than April 15, 1998. It is undisputed that Bluff City did not do so until June 18, 1998. It also is undisputed that Bluff City's compliance with the Consent Judgment occurred only after the Tamaskas sought a court order enforcing its compliance and seeking assessment of penalties for its failure to comply. Based on these facts, we hold that the district court did not err in its finding that the Tamaskas were a prevailing party under § 1365(d).

■ We also do not find that the district court abused its discretion in awarding the Tamaskas only $5,000.00 in attorneys' fees. While courts have broad discretion in determining the amount of attorneys' fees to

award in any particular case, the exercise of this discretion is limited to consideration of certain factors. These factors include:

(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 472 n. 3 (6th Cir1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)); *see also Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. 1933. Under the analysis set forth by the Fifth Circuit in *Johnson*, 488 F.2d 714, and adopted by the Supreme Court in *Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, before a court may determine the proper fee to award it must first determine the "lodestar" amount by multiplying the reasonable number of hours billed on the case by a reasonable billing rate for the work performed. *See Reed*, 179 F.3d at 471. That amount can then be adjusted by the court based on the *Johnson* factors to arrive at a reasonable fee. *See Reed*, 179 F.3d at 471. Nonetheless, the primary concern is that any fee awarded be reasonable. *Reed*, 179 F.3d at 471.

In this case, there is no evidence that the district court first determined the appropriate lodestar amount. Also, there is no evidence that the court considered many of the required factors. In fact, the court cannot determine exactly how the

district court arrived at the amount of attorney's fees it awarded. Nevertheless, when the *Johnson* standards are applied to the award of attorneys fees in this case, one arrives at roughly the same amount. Therefore, we find any error on this issue harmless, and we affirm the amount of attorney's fees awarded as a reasonable amount.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.