NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0192n.06

Case No. 21-3911

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | | May 10, 2022 |
| AARON WARD; BETSY WARD, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| MARK J. STUCKE; MARY ANNE E. STUCKE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | O P I N I O N |
| | ) | |

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge. Aaron and Betsy Ward (the "Wards") filed a complaint alleging violations of Sections 301 and 304 of the Clean Water Act ("CWA") pursuant to its citizens' suit provision, 33 U.S.C. § 1365, against their neighbors, Mark and Mary Ann Stucke (the "Stuckes"). The district court granted summary judgment for the Stuckes after concluding that the Wards failed to provide evidence that the alleged violations were continuing, as required to bring a citizens' suit. The Wards now appeal. Because there was no genuine dispute of material fact as to whether there was any ongoing violation at the time the complaint was filed, we affirm.

### I. BACKGROUND

**A. Factual Background**

This is an appeal from a grant of summary judgment, so we present the facts in the light most favorable to the Wards. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014)

(citing Fed. R. Civ. P. 56(c)). The Stuckes have owned and managed a 191-acre agricultural property in Drake County, Ohio since 2000. Their property is west of, and adjacent to, the Wards' property. On the east end of the Stuckes' property is a stream channel. This is the start of the headwaters of Boyd Creek.

The Stucke property has experienced multiple land-altering activities. In the 1990s, its previous owners installed two grassed waterway channels. These channels divert surface runoff to the stream channel on the east end of the property. In 2006 and 2011, the Stuckes installed field drainage tiles. In the fall of 2014, the Stuckes excavated their land and installed additional tiles, diverting water to Boyd Creek. Nothing in the record suggests that either the Stuckes or their predecessors in ownership obtained a permit for these projects.

On July 13, 2015, there was a heavy rain. The stormwater, groundwater, and surface water discharges from the Stucke property overflowed and flooded the stream channel. This in turn flooded the Ward property and destroyed their home. It was the first time the Wards had experienced flooding since moving to their property in 2004. But since the July 2015 flood, the Wards have experienced flood events on their property on a more frequent basis.

### B. Procedural Background

On August 6, 2018, the Wards brought a CWA citizen suit against the Stuckes, claiming "[u]nauthorized discharges of dredged and/or fill materials" into navigable waters. (First Amend. Compl., R. 13, PageID 132.) These claims were brought under Sections 301 (Effluent limitations) and 404 (Permits for dredged or fill material) of the statute. According to the Wards, the "earthmoving activities involved in the construction of the drainage channels has caused dredge[d] or fill materials to be discharged into waters of the Unite[d]s States." (*Id.* at PageID 133.) The Wards argue that this dredged and/or fill material constitutes a pollutant within the meaning of 33

U.S.C. § 1311.  In addition to alleging that the Stuckes violated the CWA, the Wards also brought two state claims under Ohio law: private nuisance and trespass.

Before a private party can bring a citizen suit, the CWA requires that they first give sixty-days' notice to the Environmental Protection Agency (EPA), the state in which the alleged violation occurs, and the alleged wrongdoer.  33 U.S.C. § 1365(a)-(b).  Thus, on February 14, 2017, prior to filing their complaint, the Wards gave notice of the alleged violations to the Stuckes, the Army Corp of Engineers, the EPA, and the Ohio Environmental Protection Agency.

On November 20, 2018, the Wards amended their complaint.  On June 9, 2021, after discovery had closed, the Stuckes filed a motion for summary judgment.  The district court granted summary judgment for the Stuckes and declined to exercise supplemental jurisdiction over the Wards' state law claims.  *Ward v. Stucke*, No. 3:18-cv-263, 2021 WL 4033166, at \*10 (S.D. Ohio Sept. 3, 2021).

The Wards timely appealed.

## II.  ANALYSIS

We review the district court's grant of summary judgment de novo.  *Laster*, 746 F.3d at 726.  Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine dispute of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Wards brought their allegations against the Stuckes pursuant to 33 U.S.C. § 1365(a)(1), which sometimes allows a private citizen to commence a civil action against a person "who is alleged to be in violation of . . . an effluent standard or limitation under" the CWA.  33 U.S.C. §

1365(a)(1). It is well established that the CWA does not permit citizens' suits for violations that were wholly in the past, instead requiring "that citizen-plaintiffs allege a state of either continuous or intermittent violation[.]" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987); *see also Tamaska v. City of Bluff City*, 26 F. App'x 482, 485 (6th Cir. 2002). For that reason, litigants who fail to provide sufficient evidence that the alleged violations are continuing, or likely to continue, lack standing. *Ailor v. City of Maynardville*, 368 F.3d 587, 599 (6th Cir. 2004). At summary judgment, the Stuckes argued the Wards lacked standing because there was no evidence of any ongoing activity or likely future activity which could lead to a CWA violation. Our focus here is whether the district court erred in concluding that the Stuckes were right.

We agree with the district court that, at the summary judgment stage, the Wards failed to carry their burden of setting forth specific facts showing that there was a genuine dispute for trial regarding whether the alleged violation(s) are "wholly past[.]" *Gwaltney*, 484 U.S. at 64; *see also Anderson*, 477 U.S. at 249. Litigants bringing citizen suits can establish an ongoing violation in two ways: "1) by proving violations that continue on or after the date the complaint is filed, or 2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Tamaska*, 26 F. App'x at 485 (quoting *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171–72 (4th Cir. 1988), *on remand from Gwaltney*, 484 U.S. at 67); *see also Allen Cnty. Citizens for Env't, Inc. v. BP Oil Co.,* 966 F.2d 1451 (6th Cir. 1992) (unpublished table decision). The Wards failed to establish an ongoing violation using either avenue.

The Wards alleged that "[t]he earthmoving activities involved in the construction of the drainage channels has [sic] caused dredge[d] or fill materials to be discharged into waters of the

Unite[d] States in violation of the Sections 301 and 404 of the CWA, and such dredge[d] or fill material has remained through the present day constituting a continuing violation of the CWA." (First Amend. Compl., R. 13, PageID 133.) At multiple points in their complaint, the Wards contend that this unlawful discharge continues. For example, they contend that "[t]he flooding caused by the Defendants' land-altering activities and continuing discharges continues to this day. The discharges and floodwaters carry silt, dirt, crop materials, road runoff, and other biological materials and pollutants from the field that accumulate in the Boyd Creek headwaters, and accumulate and remain on the Plaintiffs' land and property." (*Id.* at PageID 131.) But despite these allegations, the Wards failed to provide evidence of continuing discharge. In fact, via interrogatories, the Wards acknowledged that neither they nor their neighbors have "removed any silt, dredged or fill material" from the drainage ditch next to their property in the last ten years. (First Interrog. Resp., R. 41-4, PageID 406.) This directly contradicts allegations of ongoing activity or likely future activity which could give rise to a CWA violation.

Further, the land-altering activities that the Wards claim led to the discharge of dredged and/or fill materials all occurred before the Ward home was flooded in 2015. The Stuckes' predecessors in ownership installed the two grassed waterway channels in the 1990s. Then, the property was excavated, and drainage tiles were installed by the Stuckes in 2006, 2011, and 2014. Although these land-altering activities occurred before the Ward home was flooded in 2015, the complaint was not filed until 2018—years later.

We recognize that these activities altered the natural condition of the land, resulting in an increase in the volume of water discharged from the channel. This is likely why the Wards have experienced more frequent flood events. But as the district court recognized, "'water itself . . . is not a pollutant' and '[s]imply moving water from one place to another . . . does not constitute the

discharge of a pollutant under the' CWA." *Ward*, 2021 WL 4033166, at \*6 (quoting *Bettis v. Town of Ontario*, 800 F. Supp. 1113, 1119 (W.D.N.Y. 1992)). Thus, the district court correctly concluded that there was no evidence to suggest continued discharges of anything other than water, and certainly not dredged or fill material. Ultimately, the Wards may well have been harmed by the Stuckes' unpermitted drainage work, and they may have relief available to them under state law. But the land-altering projects at issue occurred years before the Wards filed their complaint, and no evidence has been provided to suggest there are ongoing violations of the CWA.

The Wards object, arguing that a continuing violation can be established by simply showing that the "dredge and fill remains in the altered wetlands[.]" (Memo in Opp. To Def. Mot. Summ. Judg., R. 43-1, PageID 435.) Put simply, the Wards argue that any dredge and fill left by previous unpermitted land-altering activities *also* constitutes a continuing violation for the purposes of the CWA. As an initial matter, federal circuits are split with respect to this issue. But we need not address these conflicting standards now because the Wards have not provided evidence of the continued presence of dredged and/or fill material.

The Wards lack standing to bring a citizens' suit because they failed to provide evidence showing there was a genuine dispute for trial regarding whether the alleged violations were ongoing as opposed to wholly past. Thus, the district court properly granted summary judgment to the Stuckes.

### III. CONCLUSION

We affirm the district court's grant of summary judgment.